**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| TRACI SHAW, ] | |
| ] | |
| Plaintiff, ] | Case No. 2:23-cv-942 |
| ] | |
| -vs- ] | **Judge James L. Graham** |
| ] | **Magistrate Judge Elizabeth P. Deavers** |
| RICHARD WOZNIAK, *et al.,* ] | |
| ] | |
| Defendants. ] | |

**MOTION FOR SUMMARY JUDGMENT OF THE CITY OF COLUMBUS AND
RICHARD WOZNIAK**

Now comes Defendants, Richard Wozniak and the City of Columbus ("City Defendants"),

who submit that summary judgment is proper on all of Plaintiff's claims for the following reasons:

*Federal Claims*

1.  Plaintiff's 42 U.S.C. 1983 claim under the Fourth Amendment fails because there was probable cause to charge Plaintiff (Count 1);

2.  Plaintiff's 42 U.S.C. 1983 claim under the Fourth Amendment fails because she suffered no recognized deprivation of liberty under the Fourth Amendment (Count 1);

3.  Plaintiff's 42 U.S.C. 1983 claim fails under the Fourth Amendment because she cannot demonstrate that the dismissal of her case following a discussion with the victim indicates she might be innocent of the charges (Count 1);

4.  Plaintiff's 42 U.S.C. 1983 claim under the Fourteenth Amendment fails as because substantive due process claims may not serve as the basis for a malicious prosecution action (Count 1);

5.  Plaintiff's 42 U.S.C. 1983 claim under the Fourteenth Amendment fails as law because she cannot demonstrate a deprivation sufficient for a Fourteenth Amendment claim (Count 1);

6.      Plaintiff's 42 U.S.C. 1983 claim under the Fourteenth Amendment fails because she cannot demonstrate that the actions of the City or Wozniak "shock the conscience" (Count 1);

7.       Plaintiff's 42 U.S.C. 1983 claim under the Fourteenth Amendment fails because she cannot demonstrate that her procedural due process rights were violated as she was interviewed prior to the charges being filed against her and was given notice and an opportunity to be heard as part of the criminal proceedings (Count 1);

*State Law Claims*

8.      Plaintiff's state law claims for malicious prosecution fail because there was probable cause to charge Plaintiff (Counts 2 – 5);

9.      Plaintiff's state law claims for abuse of process fail because she cannot demonstrate any ulterior motive to coerce her to do something (Count 6 -9);

10.     Plaintiff's claim for civil conspiracy fails because she cannot demonstrate any false statements made by Wozniak or conduct outside the scope of his employment (Counts 10);

*Immunity under Federal Law*

11.     Plaintiff admits she has not asserted a *Monell* claim against the City;

12.     Wozniak is entitled to absolute immunity for statements provided in support of criminal prosecution;

13.     Wozniak is entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment Claims because she cannot demonstrate a violation of a constitutional right that was clearly established at the time of the action;

*Immunity Under State Law*

14.     The City is entitled to absolute immunity for prosecutorial functions; and

15.     Wozniak is entitled to absolute immunity because there is no evidence he acted recklessly.

Support for the same is more fully set forth herein.

_/s/ Molly R. Gwin_
Molly R. Gwin (0088189)
Michael S. Loughry (0073656)
Charles Schneider (0005821)
Alexis R. Pannell (0102946)
ISAAC, WILES & BURKHOLDER, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Phone: 614-221-2121/ Fax: 614-365-9516
mgwin@isaacwiles.com
mloughry@isaacwiles.com
cschneider@isaacwiles.com
apannell@isaacwiles.com
_Attorney for Defendants Richard Wozniak_
_and City of Columbus_

# TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT PER LOCAL RULE 7.2(a)(3) ............................................. 1

II.    FACTS ........................................................................................................................................ 4

    1.    The George Floyd Protests in the City of Columbus. ....................................................... 4

    2.    The City's Investigation of Use of Force Complaints involving Officers. ........................ 4

    3.    Investigation Undertaken by Wozniak Prior to Filing Charges Against Shaw on June 9, 2021. ................................................................................................................................. 6

    4.    Investigation Undertaken by Wozniak Prior to Filing Charges on October 25, 2021. ..... 9

    5.    The Charges Against Shaw Are Voluntarily Dismissed After a Sit Down at Municipal Court with Shaw, Shaw's wife, Jaci Kincaid, Abby Kincaid, and counsel. ................................. 11

III.    LAW AND ARGUMENT .................................................................................................... 13

    1.    Shaw's 42 U.S.C. 1983 Claims Fails As a Matter Of Law. ........................................... 14

        A.    Shaw's claims for Fourth Amendment violations fail as a matter of law. ................ 14

        B.    Plaintiff's Fourteenth Amendment Claim Fails Because She Cannot Establish a Deprivation Sufficient for a Fourteenth Amendment Claim. ................................. 25

    2.    Plaintiff's state law claims fail as a matter of law. ....................................................... 30

        A.    Plaintiff cannot succeed on her malicious prosecution claim under Ohio law .................. 30

        B.    Plaintiff's Abuse of Process Claim Fails as a Matter of Law ................................. 33

        C.    Plaintiff's Civil Conspiracy Claim Fails as a Matter of Law ................................. 35

    3.    Defendants are entitled to immunity under federal and state law. ................................. 37

        A.    Plaintiff has admitted she did not plead a *Monell* claim. ....................................... 37

        B.    Wozniak is entitled to absolute immunity for statements made in a criminal prosecution. ........................................................................................................... 38

        C.    Wozniak is entitled to qualified immunity on Plaintiff's 42 U.S.C. 1983 claims. .............. 39

        D.    Wozniak is entitled to qualified immunity for actions taken in investigating these matters because Plaintiff essentially argues negligence on the part of Wozniak. ............. 43

        E.    To the extent that Plaintiff is attempting to bring federal constitutional claims against the City, it is entitled to absolute prosecutorial immunity .......................................... 44

        F.    The City is also entitled to absolute immunity for prosecutorial functions on Plaintiff's state law claims. .................................................................................. 45

        G.    Wozniak is immune from liability because Plaintiff cannot demonstrate conduct on his part that was with malicious purpose, in bad faith, or in a wanton or reckless manner. ......................................................................................................................... 47

IV.    CONCLUSION .................................................................................................................. 49

CERTIFICATE OF SERVICE .............................................................................................. 49

i

# TABLE OF AUTHORITIES

## Cases

*Abdulsalaam v. Franklin County Bd. of Comm'rs*, 637 F.Supp.2d 561, 585 (S.D. Ohio 2009) ................48

*Albright v. Oliver*, 510 U.S. 266, 275 (1994).................................................................................25

*Aliakbarkhananfjeh v. Schramm*, Case Nos. 97-3675 and 97-3804, 1999 U.S. App. LEXIS 24309, at *7 (6th Cir. Sep. 27, 1999)................................................................................................12

*All Aire Conditioning v. New York*, 979 F.Supp. 1010, 1015–16 (S.D.N.Y. 1997)................................28

*Anderson v. Creighton*, 483 U.S. 635, 639– 40 (1987)............................................................41, 42

*Anderson v. True*, Case No.17-2144, 2019 U.S. App. LEXIS 22312 ...............................................41

*Artuso v. Felt*, No. 23-3035, 2024 U.S. App. LEXIS 3178 ...........................................................15

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ..........................................................................41

*Barberick v. Hilmer*, 727 Fed. Appx. 160, 162 (6th Cir. 2018)..............................................41, 42

*Barnes v. Beachwood*, 8th Dist. Cuyahoga No. 87100, 2006-Ohio-3948........................................38

*Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) ..................................................................14

*Bickerstaff v. Cuyahoga Cty.*, N.D.Ohio No. 1:18cv1142, 2022 U.S. Dist. LEXIS 162607 ....................15

*Billock v. Kuivila*, Case No.4:11-cv-02394, 2013 U.S. Dist. LEXIS 20388........................................23, 25

*BPNC v. Taft*, 147 Fed. App'x 525, 531 (6th Cir. 2005) ................................................................25

*Brannon v. Troutman*, 75 Ohio App.3d 233, 243, 598 N.E.2d 1333 (9th Dist.1992).............................49

*Briner v. Ontario*, Case No.1:07-cv-129, 2011 U.S. Dist. LEXIS 23745...........................................25

*Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004)....................................................................41

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *Stanfield v. Lima*, 727 Fed. App'x 841, 851 (6th Cir. 2018)......................................................................................................................37

*Bykova v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 8th Dist. Cuyahoga No. 95484, 2011-Ohio-1250...................................................................................................................49

*Calloway v. Akron Police Dept.*, 2021-Ohio-4412, 183 N.E.3d 1, ¶24 (9th Dist.)................................48

*Caminata v. Cty. of Wexford*, 664 F.App'x 496, 501 (6th Cir.2016) ......................................4, 21, 43

*Cf. Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999) ...............................................29

*Champion v. Outlook Nashville*, 380 F.3d 893, 902 (6th Cir. 2004) ................................................40

*Chiaverini v. City of Napoleon*, 144 S. Ct. 1745 (2024)....................................................3, 21, 42

*Citizens in Charge v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016)..................................................40

*Claborn v. Montgomery*, No. 2:11-cv-679, 2012 U.S. Dist. LEXIS 131569 (S.D. Ohio Sep. 14, 2012)...............................................................................................................................24

*Clark v. Jackson*, No. 22-5553, 2023 U.S. App. LEXIS 8318 (6th Cir. Apr. 5, 2023).........................2, 29

*Coman v. Jackson Police Dep't,* No. 20-1037-JDT-cgc, 2020 U.S. Dist. LEXIS 150593 ....................2, 32

*Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869 (1992)........................................48

*Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st Dist. 1995)..................................48

*Cummin v. North*, 731 Fed. App'x 465, 470–73 (2018)...........................................................23, 24

*Daher v. Cuyahoga Cmty. College Dist.*, 2021-Ohio-2103 ........................................................38, 39

*Daily Services v. Valentino*, 756 F.3d 893, 904 (2014) ...........................................................1, 27

*Darrah v. Oak Park*, 255 F.3d 301, 308 (6th Cir. 2001) ..........................................................1, 25

*Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020) .....................................................1, 24, 26

*DePiero v. Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) ..........................................................25

*District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 586 (2018)........................................15

*Durham v. Estate of Losleben*, 744 Fed. App'x 268, 270 (6th Cir. 2018)........................................26

*Endres v. Northeast Ohio Medical University*, Case No.18-3825, 2019 U.S. App. LEXIS 26380 ............42

*Estate of Romain v. Grosse Pointe Farms*, 935 F.3d 485, 494 (6th Cir. 2019) ..................................26

*Etzler v. Cincinnati,* Case No.1:07-cv-1035, 2009 U.S. Dist. LEXIS 91638 ............................. 30

*Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003)............................................................. 40, 42

*Fineout v. Kostanko,* 780 Fed. App'x 317, 324 (6th Cir. 2019) ................................................ 14

*Frazier v. Clinton Cty. Sheriff's Office,* 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-6064 3, 20, 32

*Fridley v. Horrighs, 291 F.3d 867, 873 (6th Cir. 2002)* ..................................................... 19, 42

*Froehlich v. Ohio Dept. of Mental Health,* 114 Ohio St.3d 286, 288, 2007-Ohio-4161, 871 N.E.2d 1159 ........................................................................................................................ 31, 32

*Fulson v. Columbus,* 801 F.Supp. 1, 8 (S.D. Ohio 1992) ..................................................... 2, 28

*Gemperline v. Franano,* 5th Dist. Delaware No. 21 CAE 01 0002, 2021-Ohio-2394............................... 35

*Gerics v. Trevino,* 974 F.3d 798, 805 (6th Cir. 2020)............................................................... 17

*Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) ........................... 13

*Ghaster v. Rocky River,* 913 F.Supp.2d 443, 455–56 (N.D. Ohio Sept. 24, 2012)..................................... 25

*Gomez v. Toledo,* 446 U.S. 635, 640 (1980)........................................................................... 14

*Haddad v. Gregg,* 910 F.3d 237, 253 (6th Cir. 2018)............................................................. 39

*Hagans v. Franklin County Sheriff's Office,* 695 F.3d 505, 508–09 (6th Cir. 2012)........................... 41, 42

*Hall v. Sweet,* 666 Fed. App'x 469, 481 (6th Cir. 2016) ......................................................... 41

*Harris v. Detroit Pub. Sch.,* 245 F. App'x 437, 444 (6th Cir. 2007) ......................................... 29

*Harvey v. Carr,* 616 F. App'x 826, 828-29 (6th Cir. 2015) ......................................... 1, 18, 19

*Hauser v. Bartow,* 273 N.Y. 370, 374, 7 N.E.2d 268, 269 (1937)............................................ 33

*Hess v. Huber Heights,* Case No.3:13-cv-312, 2014 U.S. Dist. LEXIS 92370 ......................... 25

*Higgason v. Stephens,* 288 F.3d 868, 876 (6th Cir. 2002) ..................................................... 40

*Hill v. Jackson,* 751 Fed. App'x 772, 779 (6th Cir. 2018) ..................................................... 26

*Hilton v. Mish,* 720 Fed App'x 260, 264–66 (6th Cir. 2018)................................................... 42

*Hoffman v. Gallia Cty. Sheriff's Office,* 2017-Ohio-9192, 103 N.E.3d 1, | 38 (4th Dist.) ......... 49

*Howell v. Cox,* Case No.3:16-cv-00814, 2017 U.S. Dist. LEXIS 196961 ............................ 23, 25

*Huntsman v. Perry Local School Board of Education,* 379 Fed. App'x 456-462-63 (6th Cir. 2010)......... 30

*Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 104 S. Ct. 1758 (1984).......................... 22

*In re Initial Pub. Offering Sec. Litig.,* 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001) ......................... 18

*Jackson v. City of Cleveland,* 925 F.3d 793, 817 (6th Cir. 2019) ................................... 3, 35, 36

*Jasinski v. Tyler,* 729 F.3d 531, 541 (6th Cir. 2013)......................................................... 1, 27

*Jergens v. State Department of Rehabilitation & Corrections,* 492 Fed. App'x 567, 569 (6th Cir. 2012) ........................................................................................................................ 27

*Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839–40 (6th Cir. 1994) ............................. 35

*Johnson v. Ward,* 43 Fed. App'x 779, 782 (6th Cir. 2002) ..................................................... 25

*Jones v. Clark County, Kentucky,* 959 F.3d 748, 757 (6th Cir. 2020) ..................................... 13

*Jones v. Croft,* Case No.2:12-cv-545, 2013 U.S. Dist. LEXIS 161706 ................................... 39

*Kentucky v. Graham,* 473 U.S. 159, 166 (1985)..................................................................... 37

*Key v. Grayson,* 179 F.3d 996, 1000 (6th Cir. 1999)............................................................. 40

*Knight v. Columbus Division of Police,* Case No.2:13-cv-1271, 2014 U.S. Dist. LEXIS 128790 ............. 26

*Kunde v. Independence,* Case No.1:05-cv- 1965, 2006 U.S. Dist. LEXIS 99967 ...................... 30

*Lacey v. Ohio Aud. Of State, 10th Dist. Franklin* No. 19AP-110, 2019-Ohio-4266 ................. 31

*LaChance v. Erickson,* 522 U.S. 262, 266 (1998).................................................................. 30

*Latits v. Phillips,* 878 F.3d 541, 552 (6th Cir. 2017) ............................................................. 41

*Lester v. Roberts,* 986 F.3d 599, 608 (6th Cir. 2021)........................................................... 15

*Logsdon v. Hains,* 492 F.3d 334, 341 (6th Cir. 2007)........................................................... 15

*Lowe v. Coffee County,* Case No.4:16-cv-83, 2018 U.S. Dist. LEXIS 11897 ....................... 23, 25

*M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 506, 1994- Ohio 316, 634 N.E.2d 203 (1994) ...... 3, 38

iii

*Malley v. Briggs,* 475 U.S. 335, 341 (1986) ........................................................................... 39

*Marriott v. Persing*, 6th Cir. No. 23-3620, 2024 U.S. App. LEXIS 5964 .................................. 15

*Martin v. Cleveland Heights Police Department,* Case No.1:13-cv-1750, 2014 U.S. Dist. LEXIS 8246 ................................................................................................................................ 28, 30

*Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) ...................................................................... 30

*Matthews v. Copeland,* Case No.18-5070, 2019 U.S. App. LEXIS 16104 ................................ 41

*Mayes v. Columbus*, 105 Ohio App.3d 728, 737 (10th Dist.1995) ...................................... 13, 20

*McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 616-17 (1st Dist.1992) ................. 13, 20

*Middaugh v. Three Rivers*, 684 Fed. App'x 522, 530 (6th Cir. 2017) ....................................... 40

*Mishak v. Serazin*, Case No.1:17-cv- 1543, 2018 U.S. Dist. LEXIS 44550 .............................. 25

*Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) ....................................................................... 39

*Mitchell v. Schlabach*, 864 F.3d 416, 424–25 (6th Cir. 2017) ................................................ 41

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ........... 36, 37, 38

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ......................................................................... 41

*Noonan v. Oakland County*, 683 Fed. App'x 455, 463 (6th Cir. 2017) ............................. 1, 23, 24

*Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir.2022) ..................................................... 15

*Painter v. Robertson, 185 F.3d 557, 571 n.21 (6th Cir. 1999)* ........................................... 19, 42

*Palmer v. Schuette*, 768 Fed. App'x 422, 427–28 (6th Cir. 2019) ............................................ 28

*Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) ........................... 2, 28

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ..................................................................... 39

*Phillips v. Blair,* Case No.18-4043, 2019 U.S. App. LEXIS 26553 .......................................... 39

*Phillips v. McCollum*, Case No.4:11-cv-66, 2012 U.S. Dist. LEXIS 16219 .............................. 28

*Plumhoff v. Rickard,* 572 U.S. 765, 779–81 (2014) ................................................................ 41

*Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 OhioSt.3d 392, 2008-Ohio-2567, 889 N.E.2d 521 ......................................................................................................... 45, 46

*Rapp v. Putman*, 644 Fed. App'x 621, 628 (6th Cir. 2016) ..................................................... 25

*Red Zone 12 LLC v. City of Columbus*, 758 F.App'x 508, 514-515 (6th Cir.2019) ............ 4, 44, 45

*Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) .......................................................................... 14

*Rhodes v. Pittard, 485 F. App'x 113, 116 (6th Cir. 2012)* ................................................. 19, 42

*Richardson v. South Euclid*, 904 F.2d 1050, 1052–53 (6th Cir. 1990) ................................ 28, 30

*Robb v. Chagrin Lagoon Yacht Club*, 75 Ohio St. 3d 264, 271, 1996-Ohio-189, (1996) ........... 35

*Roell v. Hamilton County*, 870 F.3d 471, 483 (6th Cir. 2017) ............................................. 3, 40

*Rudd v. Norton Shores*, Case No.1:18-cv-124, 2018 U.S. Dist. LEXIS 133746 ....................... 25

*Rush v. Lansing*, 644 Fed. App'x 415, 424–25 (6th Cir. 2016) ................................................ 41

*Russo v. Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) ..................................................... 42

*Sacramento County v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ................................................... 26

*Sawyer v. Smith*, 497 U.S. 227, 236 (1990) ........................................................................... 41

*Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019) ......................................................... 1, 27

*Schwasnick v. Fields*, Case No.08-cv-4759, 2010 U.S. Dist. LEXIS 65958 ............................. 28

*Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001) ..................................... 43

*Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991) ...................................................................... 28

*Sorrell v. Moore*, No. 2:16-cv-401, 2017 U.S. Dist. LEXIS 238386 (S.D. Ohio Oct. 31, 2017) .......... 2, 29

*Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999) ................................................... 14

*Stout v. Columbia Gas of Ohio, Inc.*, 2d Dist. Clark No. 2020-CA-42, 2021-Ohio-609 ....... 33, 34

*Sumpter v. Wayne*, 868 F.3d 473, 487 (6th Cir. 2017) ........................................................... 41

*Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ...................................................................... 27

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ............................................................... 29

iv

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).................................................................15
*Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)...............................22
*Thacker v. Columbus*, 328 F.3d 244, 258 (6th Cir. 2003)...............................................................14
*Thieneman v. Smith*, Case No.3:17-cv-292, 2018 U.S. Dist. LEXIS 51272 ................................25
*Thornton v. Columbus,* 727 Fed. App'x 829, 838 (6th Cir. 2018) ..............................................37
*Torres v. Madrid*, 141 S. Ct. 989, 995, 209 L. Ed. 2d 190 (2021)................................................22
*Townsend v. City of Kettering*, 2d Dist. Montgomery No. 29376, 2022-Ohio-2710 ...................48
*Turkoly v. Gentile*, 7th Dist. No. 20MA0043, 2021-Ohio-965 ......................................................33
*United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)...................22
*United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006)..............................................................32
*United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) ........................................................17
*Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022)...........................................................15
*Weible v. Akron* (May 8, 1991) Summit App. No. 14878, 1991 Ohio App. LEXIS 2179, 1991 WL 77187 .............................................................................................................................2, 32
*Wertz v. West Milgrove*, Case No.3:08-cv-604, 2009 U.S. Dist. LEXIS 37129 .........................26
*West v. Atkins*, 487 U.S. 42, 48 (1988) ...........................................................................................14
*White v. Pauly,* 580 U.S. 73, 79 (2017) .....................................................................................41, 42
*Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) .............................................................................41
*Wilson v. Livermore*, 1 Fed. App'x 334, 337 (6th Cir. 2001).......................................................26
*Women's Medical Professional Corporation v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) .................2, 27
*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 301 fn. 6, 1994- Ohio 503, 626 N.E.2d 115 (1994)............................................................................................................33
*Yoder v. University of Louisville,* 526 Fed. App'x 537, 545 (6th Cir. 2013)..............................41
*Yona Inv. Grp., LLC v. Revilo's, LLC*, No. 5:19-CV-01842, 2020 U.S. Dist. LEXIS 228631, at *10 (N.D. Ohio May 27, 2020)...........................................................................................3, 33
*Young v. Owens, 577 F. App'x 410, 414-15 (6th Cir. 2014)* ...................................................19, 42
*Zumwalde v. Madeira and Indian Hill Joint Fire Dist.*, 128 Ohio St.2d 492, 2011-Ohio-1603, 946 N.E.2d 748 ......................................................................................................................48

**Statutes**

42 U.S.C. 1983 ............................................................................................................................passim
Ky. Rev. Stat. § 503.110(1) ..............................................................................................................19
Ky. Rev. Stat. § 508.030(1)(a) ..........................................................................................................19
Ky. Rev. Stat. §§ 508.030, 500.080(13) ...........................................................................................18
R.C. 2744 ...........................................................................................................................................45
R.C. 2744.01(C)(1) ...........................................................................................................................46
R.C. 2744.01(C)(2)(f) .......................................................................................................................47
R.C. 2744.01(F) .................................................................................................................................45
R.C. 2744.01(G)(2) ...........................................................................................................................46
R.C. 2744.02(B)...........................................................................................................................45, 46
R.C. 2744.03 ..........................................................................................................................46, 47, 48
R.C. 2744.03(A)(1) ...........................................................................................................................47
R.C. 2744.03(A)(6) ...........................................................................................................................48
R.C. 2744.03(A)(6)(b) .................................................................................................................48, 49
R.C. 2903.13(A) ................................................................................................................................21
R.C. 2921.01 .....................................................................................................................................21
R.C. 2921.44(E)..............................................................................................................................9, 21

R.C. 2921.45 ................................................................................................................................... 9, 21, 22

**Constitutional Provisions**

U.S. CONST. amend. IV ......................................................................................................................... 14

**MEMORANDUM IN SUPPORT**

**I.     SUMMARY OF THE ARGUMENT PER LOCAL RULE 7.2(a)(3)**

The City Defendants argue Shaw's 42 U.S.C. 1983 claims for violations of her Fourth Amendment rights fail as a matter of law because there was probable cause to charge Shaw with assault (pages 12 – 19), dereliction of duty (pages 19-20) and interference with civil rights (pages 21-22). *Harvey v. Carr*, 616 F. App'x 826 (6th Cir. 2015). Moreover, the City Defendants argue that Shaw cannot demonstrate a deprivation of liberty as understood under the Fourth Amendment merely because she was summoned and required to defend the criminal charges. (Pages 22-25). *Noonan v. Oakland County*, 683 Fed. App'x 455, 463 (6th Cir. 2017)

It is undisputed that Shaw was placed on administrative leave and received full pay during such time. (Page 24). Finally, a federal malicious prosecution claim arises under the Fourth Amendment and with no required Fourth Amendment deprivation (which is not present here), even assuming a lack of probable cause, Shaw's claims fail as a matter of law. (Page 24-25).  *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020).

Moreover, Shaw's Fourteenth Amendment claim fail because substantive due process does not recognize a claim for malicious prosecution. (Page 26-27). Primary Authority: *Darrah v. Oak Park*, 255 F.3d 301, 308 (6th Cir. 2001). Shaw is therefore required to demonstrate conduct by Wozniak or the City that "shocks the conscience" and Shaw has not alleged such conduct in her Complaint. (Page 27-28). Finally, Shaw cannot demonstrate her procedural due process rights were violated because she was interviewed, with an attorney present, and was afforded sufficient process by way of the criminal charges (Pages 28-29). *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019); *Daily Services v. Valentino,* 756 F.3d 893, 904 (2014); *Jasinski v. Tyler*, 729 F.3d 531, 541

1

(6th Cir. 2013); *Women's Medical Professional Corporation v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Moreover, Shaw was not deprived of a sufficient interest via her alleged media attention, because the Sixth Circuit has specifically recognized that defending oneself from criminal charges does not constitute a sufficient deprivation for purposes of a procedural due process claim absent something more via the articulation of the stigma plus standard. (Pages 29-31). A complaint which alleges no loss beyond the inconvenience of defending oneself in court does not state a claim under § 1983." *Fulson v. Columbus,* 801 F.Supp. 1, 8 (S.D. Ohio 1992); *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). This Court has specifically recognized that Plaintiff has no protected property interest in overtime and special duty pay for purposes of the Fourteenth Amendment. (Page 31-33). In *Sorrell v. Moore*, No. 2:16-cv-401, 2017 U.S. Dist. LEXIS 238386 (S.D. Ohio Oct. 31, 2017). Finally, Shaw's allegation that she lost her job at Columbus State because of the charges, even assuming it is true is insufficient to create a protected property interest. Shaw was an at will employee and there is no property interest in at will employment. (Pages 32-33). *Clark v. Jackson*, No. 22-5553, 2023 U.S. App. LEXIS 8318 (6th Cir. Apr. 5, 2023). Moreover, Shaw was afforded sufficient process via her interview, and, at any rate, has not pled a violation of her procedural due process rights. (Pages 33-34).

As with Plaintiff's federal claims, so to do Plaintiff's state law claims fail as a matter of law. While the articulation is slightly different regarding the investigating officer's obligation to consider an affirmative defense under Ohio law, it is clear that an officer is not required to evaluate every affirmative defense, and conflicting evidence will not negate probable cause. (Pages 34-36). *Coman v. Jackson Police Dep't,* No. 20-1037-JDT-cgc, 2020 U.S. Dist. LEXIS 150593; *Weible v. Akron* (May 8, 1991) Summit App. No. 14878, 1991 Ohio App. LEXIS 2179, 1991 WL 77187 (finding a "police officer is not required to weigh and evaluate the truth of alleged affirmative

2

defenses to a crime before he may act upon probable cause to arrest and charge a defendant"). See also, *Frazier v. Clinton Cty. Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-606. Moreover, the record is clear that Wozniak included relevant evidence as Traci Shaw presented it, including interviewing Traci Shaw. (Page 36). Similarly, Plaintiff's abuse of process claim fails as a matter of law because even assuming there was effort to be responsive to an unidentified voice the community, as Shaw alleges, there is no evidence such alleged "bad motive" is sufficient to establish an effort to coerce her with respect to something outside the proceeding itself. (Pages 37-39). *Yona Inv. Grp., LLC v. Revilo's, LLC*, No. 5:19-CV-01842, 2020 U.S. Dist. LEXIS 228631, at *10 (N.D. Ohio May 27, 2020). Plaintiff's conspiracy claim also fails as a matter of law. It is undisputed that all actions of Investigator Wozniak were undertaken in his role as the Special Investigator for the City. (Pages 39-40). Moreover, Wozniak interviewed Shaw and, at a minimum, Shaw has no Constitutionally protected interest in her rights to overtime and special duty pay. (Id. at page 41.) *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019).

Even assuming that Plaintiff could overcome all of these issues, the City should be dismissed because Plaintiff has admitted she has no Monell claim against the City. (Pages 41-42). Investigator Wozniak should be dismissed because he is entitled to absolute immunity for statements provided in a criminal prosecution. (Id. at 42-32). *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 506, 1994- Ohio 316, 634 N.E.2d 203 (1994). Finally, Wozniak is entitled to qualified immunity on Plaintiff's 42 U.S.C. 1983 claims because Shaw cannot demonstrate a violation of her Fourth or Fourteenth amendment rights, and, at any rate she cannot demonstrate that the right was clearly established at that time. (Pages 44-50). *Roell v. Hamilton County*, 870 F.3d 471, 483 (6th Cir. 2017). The fact that Plaintiff is required to prove probable cause with respect to each claim because of the Supreme Court's recent holding in *Chiaverini v. City of*

3

*Napoleon*, 144 S. Ct. 1745 (2024) was not applicable at the time the charges were filed and therefore, probable cause as to one element should defeat all other elements. (Page 50). Woziak's alleged negligence (even if true) is not sufficient to defeat qualified immunity. (Pages 50-54). *Caminata v. Cty. of Wexford*, 664 F.App'x 496, 501 (6th Cir.2016). The City is also absolutely immune from prosecutorial functions. *Red Zone 12 LLC v. City of Columbus,* 758 F.App'x 508, 514-515 (6th Cir. 2019). Finally, Plaintiff fails to establish conduct that is at a minimum reckless on the part of Wozniak because it is undisputed that Wozniak interviewed relevant witnesses, reviewed the video footage, and interviewed Traci Shaw. (Page 56-58). For these reasons, Defendants are entitled to judgment as a matter of law.

## II.    FACTS

### 1.    The George Floyd Protests in the City of Columbus.

On May 25, 2020, Derek Chauvin of the Minneapolis, Minnesota Police Department murdered George Floyd. ECF 1, Page ID 3, ¶13. In the following days, and commencing on or about May 28, 2020, and continuing into June, 2020, citizens of Columbus, like those in many other cities across the country, took to the downtown streets to protest this murder and injustice. ECF 1, Page ID 3, ¶14. During and immediately after the protests, complaints were received by the City from numerous people regarding allegations of police misconduct and/or excessive force deployed upon protesters. Affidavit of George Speaks Ex. B., ¶3.

### 2.    The City's Investigation of Use of Force Complaints involving Officers.

The Department of Public Safety ("Department") manages the divisions of fire, police, and support services and all allegations of misconduct were directed to the Department for investigation and review. To maintain the integrity of the investigation, the Department formed the Public Safety Use of Force Committee to review all complaints, and to determine if the

4

complained of actions should be handled via an Internal Affairs Investigation or evaluated for criminal misconduct. Id. at ¶4. All Internal Affairs Investigations were handled by outside counsel, while all potential criminal matters were referred to Richard Wozniak, the Deputy Director for the Department, for investigation. Id. at ¶¶4, 5. In the event of a referral for potential criminal prosecution, all administrative investigations alleging suspected workplace misconduct were suspended until the conclusion of the criminal investigation. Id. at ¶4. A special prosecutor, Kathleen Garber, was hired to handle prosecution of the matters. ECF 55-1, Page ID 1126. Ultimately, three officers were criminally charged with misdemeanors, one of whom is the Plaintiff, Traci Shaw.

On or about June 1, 2020, a complaint was submitted by Jaci Kincaid to the email address of Report CPD@columbus.gov established by the City to allow for reporting by members of the community. See Affidavit of Wozniak Ex. A¶6 Doc 59-1, Page ID 2384. As of June 18, 2020, 815 emails were received by the City. Ex B,¶3. The email from Ms. Kincaid stated:

> Hello, This [sic] incident was caught on camera by my friend who was recording a live video on Instagram. We were walking home, several blocks from the major crowd of protestors on Saturday night. The protestors were all still down town at this point and we had made our way to the Short North to escort a young black man who was walking alone to his ride. After he left, we made our way back toward High Street to turn right to get home as my friend lives behind Goodale Park. This female officer got out of her car and walked right toward us and pepper sprayed us. My female friends and I were unarmed and walking by two other young women and all of us were sprayed – we did not provoke the officer at all. You can see my right hand before we get sprayed trying to point to the right as I was going to tell her we were headed home. She did not speak a word to use before aiming the pepper spray directly at our faces. We were obviously distraught and angry and scattered. We didn't return to the scene after that and we took a longer route home.
>
> We were not able to identify her face, but she was around 5 feet tall and white. The time of the event was 7:52pm and we were on the corner of High Street and Goodale near Bar 23 and the Orthodox Church. I also attached a screen shot of the officer's car. It appears the car number is 7315. Thank you for your service to this movement. Please let me know if there is anything else I can do to help. Thank you Jaci Kincaid [phone number redacted].

Ex. A(1); Doc 59-1, Page ID 2384; Doc 59-1 Page ID 2388;.

**3.   Investigation Undertaken by Wozniak Prior to Filing Charges Against Shaw on June 9, 2021.**

The email from Jaci Kincaid and the attached video evidence resulted in the Shaw matter being referred for evaluation as to whether potential criminal charges were appropriate. Investigator Wozniak assigned numbers to the Events investigated because in some cases the identity of the officers involved was not readily ascertainable based upon the evidence submitted. Ex. A at ¶3; Doc 59-1, Page ID 2383. Ultimately, twenty events were referred for potential criminal analysis and investigated by Wozniak. Id. To investigate the twenty Events, Wozniak took the following steps: 1) reviewing video footage and complaints as referred to him from the Public Safety Use of Force Committee; 2) where available, reviewing body worn camera footage of suspect and witness officers; 3) reviewing City cameras for evidence to corroborate witness and officer testimony; 4) requesting the Chief of Police add to the daily bulletin to publicize any complaints received and asking officers to come forward with information; 5) reviewing CPD call logs; 6) interviewing involved officers either via proffer offers, *Garrity* interviews or, as in the case of Shaw, through voluntary interviews. Id. at ¶3(a)-(f); Doc 59-1, Page ID 2383.

The attached video as submitted by Ms. Kincaid is the best evidence of what occurred at 7:52 p.m. as indicated on the video time stamp and is submitted as Exhibit A(4); (filed by hand on July 11, 2024). However, Wozniak did not stop with the video evidence. He also reviewed the following information as part of his investigation and prior to averring as to probable cause to charge Shaw:

1)   reviewed the video as submitted by Jaci Kincaid and prepared a timeline of the items in the video. Wozniak (Affidavit ¶7(a));

2)   reviewed the Body Worn Camera (BWC of Officer Kaitlyn Morales to verify the identity of Officer Shaw (Wozniak Affidavit ¶7(c));

6

3)      reviewed the BWC of Officer Daniel Hand (Id. at ¶7(c));

4)      reviewed the Summary of Incident Report prepared by Sergeant DeBolt of the Franklin County Sheriff's SWAT Team. As per Wozniak's Investigative Report, this document notes a chronology of rioters being pushed back towards the Short North between 19:15-19:30 hrs. (Id. at ¶7(e); see also, Investigative Summary, pg. 5);

5)      reviewed video submitted by Ian Brandeberry and interview of Ian Brandeberry (Id at ¶7(f));

6)      interviewed victim Jaci Kincaid on September 2, 2020 (Id. at ¶7(g)). Ms. Kincaid testified that Shaw's actions were "totally unprovoked" (Investigative Summary, pg. 6). Ms. Kincaid told Mr. Wozniak that Shaw never spoke or said anything to Kincaid, Sumner, and Hensel prior to deploying her chemical agent. Id. Ms. Kincaid also told Wozniak that she put her hands up, trying to tell the Officer that they were just trying to get home. Id. Ms. Kincaid indicated that no other officers came up to or approached Kincaid prior to her being pepper sprayed. Id. Ms. Kincaid indicated that at the time of deployment of the chemical agent she turned her head and was hit in the ear, but Ms. Sumner and Ms. Hensel were shot in the eyes (Id.);

7)      reviewed the arrest report of David Luyster as completed by Officer Thomas Paige (Wozniak Affidavit, ¶7(i));

8)      interviewed David Luyster on October 20, 2020;

9)      reviewed the CPD radio logs and phone calls made from Officer Shaw on May 30, 2020 (Id. at ¶7(j));

10)     interviewed Officer Thomas Paige on February 5, 2021 (Id. at ¶7(k)); and

11)     interviewed Shaw on February 8, 2021 (Id. at ¶7(l)).

Doc 59-1, Page ID 2382-2387. Prior to signing the probable cause affidavit, Wozniak and Special Prosecutor Garber consulted with a former CPD training officer Willard McIntosh regarding the actions depicted in the video as submitted by Ms. Kincaid. Id. at ¶7(m); Doc 59-1, Page ID 2473; paragraph 5.

7

The video evidence submitted shows Shaw getting out of her vehicle and pepper spraying the group. Ex A(4). During her interview, Shaw told Wozniak she gave the order to clear the area at 7:19 p.m. Ex. A(3), pg. 16, Doc 59-1, Page ID 2308. Thereafter, the Franklin County Sheriff's Office deployed gas between 7:30 and 7:35 pm. Shaw indicated there were no protestors in the intersection at Goodale and High at 7:50 pm. Ex. A(3) page 17, Doc 59-1, Page ID 2309. A summary of the relevant facts from the interview is as follows:

> PO Shaw believed the PEPPER SPRAYED GROUP comprised of one male and the rest were females. PO Shaw was "not for certain" on the race of any of the individuals in the PEPPER SPRAYED GROUP. Just prior to this, PO Shaw gave the PEPPER SPRAYED GROUP verbal commands, not using a PA, to clear the area. PO Shaw also "pointed to the east." PO Shaw gave these verbal commands to the PEPPER SPRAYED GROUP at a distance of approximately 50 feet. The first of two verbal commands occurred approximately fifteen minutes before PO Shaw "maced" the PEPPER SPRAYED GROUP. The arrest of David Luyster occurred at 7:52 p.m. and PO Shaw gave the first verbal command at approximately 7:37 p.m.

Ex. A(3), pg. 18, Doc 59-2, Page ID 2410.

Shaw indicated she did not complete a Use of Force Report documenting the deployment of her chemical agent. ECF 56-1, Page ID 2041. She testified that when she was interviewed by Wozniak, she did not tell him that she displayed her mace to the group, only that she used hand gestures. Id at Page ID 1981. She subsequently admitted that she did not inform Mr. Wozniak that she escorted a group voluntarily through the intersection who (like the group in question) were just trying to go home. Id. at Page ID 1960. This information was contained in Sergeant Laura Suber's voluntary statement received by Wozniak in September, 2021. Doc 59-2, Page ID 2487-2503. Shaw testified the group [comprised of the victims] appeared in the intersection between 7:35 and 7:52. Id at Page ID 1959. She further testified that after deploying her chemical agent mace she did not undertake any decontamination efforts; did not make any effort to assist the group; and did

8

not effectuate an arrest of the group. Id at Page ID 2010. Shaw informed Wozniak that at 7:52 she assisted in the arrest of David Luyster. Ex. A(3), pg. 17; Doc 59-2, Page ID 2309; see also, Doc 56-1, Page ID 1993. Mr. Luyster was located in the same direction that the group was directed. Doc 56-1, Page ID 2009-2010.

On June 9, 2021, and based upon the information gathered in his investigation, Wozniak averred via the Probable Cause Affidavit that: "[a] video taken during this protest showed Shaw exiting her Columbus Police Department marked cruiser, walking up to individuals on the sidewalk and pepper spraying these individuals." Ex. 13 to Ex. A; Doc 59-2, Page ID 2476. As a result, Shaw was charged with misdemeanor assault against Hensel, Sumner, and Kincaid (R.C. 2903.13(A)); dereliction of duty against Hensel, Sumner, and Kincaid (R.C. 2921.44(E)); and interference with civil rights against Hensel, Sumner, and Kincaid (R.C. 2921.45). Ex. A(13). Doc 59-2, Page ID 2476-2486.

**4.      Investigation Undertaken by Wozniak Prior to Filing Charges on October 25, 2021.**

Following the original charges, Wozniak continued to investigate and interview relevant witnesses. Exhibit A, ¶¶ 7(q)-(ee), Doc 59-1, Page ID 2384-2387. This included the following actions: 1) interviewing victim Haley Hensel on August 11, 2021 and August 13, 2021; 2) interviewing an eye witness Stephen Zenner on August 16, 2021, and August 20, 2021; 3) interviewing the wife of Jaci Kincaid, Abby Kincaid, on August 25, 2021; 4) reviewing written statements of Sergeant Suber and Sergeant Baker as submitted on September 3, 2021 (Sergeant Suber was Shaw's sergeant on May 30, 2020); 4) interviewing Commander Mark Lang on September 23, 2021; and, interviewing the fourth victim, Alisha Watters, on October 11, 2021. Id. Hensel informed Wozniak (as documented in his report) that the group was approached by an officer, and Hensel explained to that officer that they were just trying to get home and wanted to

9

go through Goodale Park. Exhibit 3 to Exhibit A, Doc 59-1, Page ID 2415. Hensel indicated that the officer explained they could not go through the intersection because there were protests occurring north of the intersection and they could only go east on Goodale. Id. at 25; Doc 59-2, Page ID 2417. Hensel informed Wozniak that as a result they were "stuck" in the alley because they could not go east or west on Goodale. Doc 59-2, Page ID 2417. Hensel similarly corroborated she heard no verbal warnings from Shaw prior to being sprayed. Doc 59-2, Page ID 2417.

Similarly, an eyewitness and photojournalist, Stephen Zenner, informed Wozniak that while he recalled the "armored car" giving an order to clear the area, Zenner stated he did not recall the officer who pepper sprayed the girls saying anything or approaching the girls prior to being pepper sprayed. Doc 59-2, Page ID 2423. Finally, Wozniak interviewed Alisha Watters, who identified herself in the video. Wozniak also interviewed CPD Commander Mark Lang, who told Wozniak it would be "common sense" for the officer to have a "conversation" with the person trying to enter a crime scene. Doc 59-2, Page ID 2429. Commander Lang was asked how an officer would have been trained to react to a person who was not trying to force their way through scene tape, and stated it would not be proper for the officer to just pull out a night stick or pepper spray the person without first talking to that person. Doc 59-2, Page ID 2429.

Based upon this information, on October 25, 2021, Shaw was again charged so that charges based upon conduct against Alisha Watters could be included.  Ex. A(20); Doc 59-3, Page ID 2515.  The Probable Cause Affidavit added:

> In September of 2020, Victim #1 was interviewed and provided the following information: Victim #1, Samantha Sumner (Victim #2) and Haley Hensel (Victim #3) were going to a friend's apartment. Victims #1, #2 and #3 made a right down Goodale Street and were coming back to High Street. An unknown female Officer (later identified as Shaw) exited a police SUV. Victim #1 put her hand up to try to tell Shaw that they were just trying to get home. Shaw came up and started spraying Victims #1, #2, and #3. Shaw never spoke or said anything to Victims #1, #2 and

10

#3. Victim #1 spun her head quickly and the pepper spray got behind her ear. Victims #2 and #3 were pepper sprayed in their eyes. After being pepper sprayed Victims #1, #2 and #3 tried to get their composure. Victim #1 was blinded for a little while. Victims #1, #2 and then #3 then walked the opposite way after being pepper sprayed.

Further investigation has identified one of the two other unknown young women identified by Kaci [sick] Kincaid (Victim #1) in Paragraph C as Alisha Watters (Victim #4). In October of 2021, Victim #4 was interviewed and provided the following information:

Victim #3 was in the area of Goodale Street and High Street when she met Victims #1, #2, and #3. Victim #4 did not know Victims #1, #2, and #2 prior to this meeting. Victim #1 asked Victim #4 to help her get home. As victims #1,#2,#3 and #4 approached the intersection of Goodale Street and High Street they were pepper sprayed by a female (later identified as officer Shaw).

Ex. A(20); Doc 59-3, Page ID 2515-2516. As a result, Shaw was charged on October 25, 2021, for assault, dereliction of duty, and interference with civil rights for actions taken against Alisha Watters. Ex. A, ¶7(w). Given the amended Affidavit, even assuming there was not probable cause to charge Shaw on June 9, 2021, there was certainly probable cause to charge Shaw on October 25, 2021.

During the pendency of the charges, Shaw was placed on administrative leave with pay (her same rate of pay) (Doc 56-1, Page ID 1919). During that time, Shaw was assigned to take offense reports and answer phones. Id.

**5. The Charges Against Shaw Are Voluntarily Dismissed After a Sit Down at Municipal Court with Shaw, Shaw's wife, Jaci Kincaid, Abby Kincaid, and counsel.**

On July 19, 2022, the criminal charges against Shaw were dismissed upon motion of the City. ECF 56-1, Page ID 2014. It is undisputed that Shaw was only required to report to Court for two days in July. Id. The charges were dismissed after Shaw spoke with the victim, Jaci Kincaid, and her wife. Id. As Shaw testified:

11

Q.      Was there ever any discussion on the days that you were down at court on the day of trial regarding a plea deal that would involve an apology, was there some discussion of that?

A.      No, not an apology.

Q.      What did the discussions involve regarding a plea?

        Mr. Goldstein: Attorney/client privilege. Go ahead and tell her about that. I'm not worried about that. Go ahead.

A.      I was taken to a room with my attorney and my wife, and they said that the victims would like to speak with me.

Q.      Okay.

A.      And that then the case would be – the case would be dismissed.

Q.      Okay.

A.      And they asked if I would speak with them, and I said of course.

ECF 56-1, Page ID 216-217.   A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused. *Aliakbarkhananfjeh v. Schramm*, Case Nos. 97-3675 and 97-3804, 1999 U.S. App. LEXIS 24309, at *7 (6th Cir. Sep. 27, 1999) (citing Restatement (Second of Torts § 660 (1977)).

12

### III. LAW AND ARGUMENT

Much has been made in the case of whether the deployment of Shaw's chemical agent was reasonable. The report of Plaintiff's expert James Scanlon goes so far as to opine that the riot conditions downtown as early as two days prior must be considered in determining whether the deployment of a chemical agent by Shaw was reasonable on May 30, 2020. While Scanlon's statements that riots occurring two days prior are relevant to determining whether deployment of a chemical agent is reasonable, when viewed against video evidence, and considering the dictate in the Sixth Circuit (see generally *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996)) casts doubt on the soundness of Scanlon's methodology, the case is not an excessive use of force case. The primary issues here are: 1) was there probable cause to charge Shaw; and 2) did Shaw suffer any recognized deprivation as a result of the charges. Probable cause is based upon information known to Wozniak at the time the charging affidavit was signed. See *Mayes v. Columbus*, 105 Ohio App.3d 728, 737 (10th Dist.1995), citing *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 616-17 (1st Dist.1992). Probable cause may exist when, as here, there is conflicting evidence between the alleged wrong-doer's statements and the victim's statements. A "'probable cause determination . . . does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands.'" *Jones v. Clark County, Kentucky*, 959 F.3d 748, 757 (6th Cir. 2020) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)). For the reasons set forth herein, probable cause existed to charge Traci Shaw. Moreover, Shaw suffered no deprivation as a result of such charges as she has no constitutionally protected right in overtime and special duty pay.

13

1.      **Shaw's 42 U.S.C. 1983 Claims Fails As a Matter Of Law.**

      A.      **Shaw's claims for Fourth Amendment violations fail as a matter of law.**

      Shaw alleges: "Wozniak was acting under color of law when he wrongfully and without legal justification subjected Plaintiff to unreasonable seizure and malicious prosecution, depriving her of liberty and due process of law." ECF ID 1, Page ID 15. 42 U.S.C. § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To plead a § 1983 claim, a plaintiff must allege: (1) "some person has deprived [her] of a federal right"; and (2) the "person who has deprived [her] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Fineout v. Kostanko*, 780 Fed. App'x 317, 324 (6th Cir. 2019).

      Shaw's first claimed deprivation of a federal right alleges she was subject to an "unreasonable seizure." ECF ID 1, Page ID 15. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Shaw does not specifically allege anything that would constitute either a search or a seizure under Fourth Amendment jurisprudence. She does refer to the municipal court proceedings against her as a "malicious prosecution," and the Sixth Circuit does recognize a malicious prosecution claim under the Fourth Amendment that includes "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citing *Thacker v. Columbus*, 328 F.3d 244, 258 (6th Cir. 2003); *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999)). There are four essential elements to such a claim:

      First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to

14

prosecute.… Second, because a § 1983 claim is premised on the violation of a
constitutional right, the plaintiff must show that there was a lack of probable cause
for the criminal prosecution.... Third, the plaintiff must show that, as a consequence
of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood
in our Fourth Amendment jurisprudence, apart from the initial seizure.… Fourth,
the criminal proceeding must have been resolved in the plaintiff's favor….

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (quotations, citations, alterations

omitted). Here, Plaintiff cannot demonstrate element two.

### i.    Plaintiff cannot demonstrate a lack of probable cause for the charges brought against her.

For probable cause to exist: "the facts and circumstances known to the officer" must be

sufficient to lead a "prudent man" to believe an offense has been committed. *Logsdon v. Hains*,

492 F.3d 334, 341 (6th Cir. 2007), *Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir.2022)

(citing *Logson v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). "Probable cause is defined as

reasonable grounds for belief, supported by less than prima facie proof but more than mere

suspicion." *Bickerstaff v. Cuyahoga Cty.*, N.D.Ohio No. 1:18cv1142, 2022 U.S. Dist. LEXIS

162607, at *47 (Sep. 8, 2022). "Probable cause is 'not a high bar' and 'does not require the same

type of specific evidence of each element of the offense as would be needed to support a conviction

beyond a reasonable doubt.'" *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021)(citations

omitted). Rather, it "requires only a probability of substantial chance of criminal activity, not an

actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 586

(2018). "Officers do not need to conduct quasi-trials." *Logsdon*, 492 F.3d at 342; *see Washington

v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022) ("[A]n officer is not required to investigate an

individual's innocent explanations as to an alleged crime, ***nor to resolve all credibility issues

between witnesses, before making an arrest based on probable caus***."); *Marriott v. Persing*, 6th

Cir. No. 23-3620, 2024 U.S. App. LEXIS 5964, at *6 (Mar. 11, 2024) (emphasis supplied); *Artuso*

15

*v. Felt*, No. 23-3035, 2024 U.S. App. LEXIS 3178, at *3 (6th Cir. Feb. 8, 2024) (finding probable cause where detective interviewed subject, spoke with the subject's niece, an apartment complex manager and subject's son wherein none of the parties interviewed could corroborate the attack, but confirmed the background of the story, and where inspector collected, but did not review cell phone logs containing exculpatory evidence and plaintiff was acquitted).

Here. the video evidence and statements of Jaci Kincaid establish probable cause to charge Shaw with assault, dereliction of duty, and interference with civil rights. The video shows Shaw jumping out of the vehicle and deploying her chemical agent. Ex. A(4). The video evidence, and resultant statements of testimony of Shaw confirms Shaw did not see for certainty any present in the group have weapons, and that Shaw failed to render aid to the girls following the deployment of the pepper spray. Doc 56-1, Page ID 2010. While Shaw testified that the parties "could have" had a weapon, it is undisputed that she observed no weapons on them. Ex. A(3), pg. 22; Doc 59-2, Page ID 2415. The testimony of Jaci Kincaid indicates that the spraying was "totally unprovoked." Ex. A, Ex. 3 pg. 7; Doc 59-2, Page ID 2399. Finally, it is undisputed that Shaw told Wozniak the following during her interview at Min. 46:00-48:00:

> There was a group that um was in the rear of 5700 N. High that I had two commands to clear the area and then they came around the building just as I had just gotten into my cruiser, they came around the building and I know they were coming directly toward and I was in fear for the safety of the field force and so I exited my cruiser and deployed mace on the group and then I entered into my cruiser and immediately went down and arrested Mr. Luyster.
>
> ---
>
> Q.     And you stated prior to that you had given them commands to leave the area.
>
> A.      Yes sir.
>
> Q.     And how were those commands given?

16

A.     I gave them verbal commands that they needed to clear the area and then I also pointed to the east.

Q.     Was that via the PA system or talking to them directly.

A.     Givin them verbal commands sir without a PA.

Q.     And what type of distance were you from them?

A.     So the length of that building is 111 feet and they came up so at least halfway so within fifty feet.

Q.     And time wise, when you gave those verbal commands til you exit your vehicle and pepper spray the group, how much time had passed?

A.     Umm. So those - The two commands I gave before I would not say anymore than 15 minutes, somewhere – those two commands were given within 15 minutes, and then the third time that they approached I maced them, and so I would say the two commands were within fifteen minutes of them.

Q.     That it was within fifteen minutes of the pepper spray or the two commands?

A.     Within the – from the first time I gave the commands until I maced was within fifteen minutes.

(Ex A(10) Interview, Min. 47-50)

Anticipating Shaw's argument that the testimony use of her experts, James Raterman and James Scanlon, establishes a lack of probable cause, the City Defendants note that testimony is insufficient to establish a disputed issue of material fact for two reasons. First, both were retained after the fact: Scanlon for the purposes of the defense of the criminal charges as a use of force expert, and Raterman for purposes of this case as an investigation/probable cause expert. It is undisputed that Wozniak and Garber did not consult with either of them. Second, probable cause is within the province of this Court to decide – it is not a matter for an expert opinion. An expert may not "render conclusions of law." *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017). "the ultimate question of probable cause . . . in a civil case when the historical facts are undisputed is a question of law for the court. . . ." *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020). Indeed,

17

the inadmissibility of legal opinions is "so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle." *In re Initial Pub. Offering Sec. Litig.*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001). Both expert Reports are replete with references to legal conclusions. Scanlon's report, somewhat incredibly, goes so far as to state that had criminal charges been brought against Shaw under the Fourteenth Amendment (Due Process) claim, he would have argued that the actions of Shaw do not shock the conscience. (Scanlon Supplemental Report, pg. 7). As set forth below, whether the force by Shaw was reasonable is a defense to the charge of assault that would have been decided had the criminal trial gone forward. For these reasons, these two experts fail to create a disputed issue of material fact as to the existence of probable cause.

The impact of the assertion of an affirmative defense on a determination of probable cause (and qualified immunity) is well established in the Sixth Circuit. *Harvey v. Carr*, 616 F. App'x 826 (6th Cir. 2015). In *Harvey,* Harvey's son, Hunter, spilled a drink and would not clean it up. Id. at 827. Thereafter, Harvey slapped his son in the face. Id. The court noted that witness counts thereafter diverge as to the full extent of the violence between the parties. Id. Harvey was charged with fourth degree assault. Id. Harvey moved to dismiss for lack of probable cause. Id. Following trial, the jury found Harvey not guilty. Id. In finding that Carr (the arresting officer) was entitled to qualified immunity, the Sixth Circuit's discussion is instructive:

> Harvey argues that Carr littered his arrest citation with falsehoods to gin up probable cause for the arrest. According to Harvey, Carr falsely stated that Harvey hit Hunter "as hard as [he] could" and left a mark on Hunter's face. Strip away these falsehoods, Harvey claims, and the sole fact known to Carr at the time of Harvey's arrest was the slap. And, Harvey continues, without any physical injury resulting from the slap, Carr lacked a basis for charging Harvey with fourth-degree assault. *See* Ky. Rev. Stat. §§ 508.030, 500.080(13) (defining physical injury as "substantial physical pain or any impairment of physical condition").

18

But even the undisputed facts establish probable cause. Harvey, Hunter, and a pool employee all confirmed that Harvey slapped his son. And Carr knew that the slap hurt Hunter. These undisputed accounts gave Carr probable cause to believe that Harvey intentionally caused physical injury to Hunter. *See* Ky. Rev. Stat. § 508.030(1)(a).

Next, Harvey argues that Carr should have known that the parental-discipline statute justified Harvey's use of force against Hunter. In Kentucky, a parent may use physical force upon his child if he both "believes that the force used is necessary to promote the welfare of [his child]" and that "[t]he force that is used is not designed to cause or known to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain, or extreme mental distress." Ky. Rev. Stat. § 503.110(1). Harvey contends that the slap was necessary because Hunter "came at [him], flipped [him] off and said 'Fuck You.'" Harvey also maintains that Carr should have known that the scuffle posed no risk of death, serious physical injury, disfigurement, extreme pain, or extreme mental distress to Hunter. Indeed, Hunter told Carr that Harvey hit him just once and that it only "hurt for a couple seconds." Based on this information, Harvey argues, any reasonable officer would have known conclusively that the parental-discipline statute protected Harvey's use of force, and no reasonable officer would have arrested Harvey for legal parental discipline.

> ***We do not require officers making arrests to "inquire into facts and circumstances in an effort to discover if the suspect had an affirmative defense." Fridley v. Horrighs, 291 F.3d 867, 873 (6th Cir. 2002). Nor must officers "conduct [pre-arrest] quasi-trials" whenever an investigative target "asserts a purported legal excuse for his actions." Painter v. Robertson, 185 F.3d 557, 571 n.21 (6th Cir. 1999). <u>Only if "a reasonable police officer would conclusively know that an investigative target's behavior is protected by a legally cognizable affirmative defense" does the officer lack a legal foundation for arrest.</u> In fact, when the facts known to the officer track the elements of an offense, we routinely grant qualified immunity on false-arrest claims even when the suspect asserts, or circumstances suggest, an applicable affirmative defense.[1] See, e.g., Fridley v. Horrighs, 291 F.3d 867, 874-75 (6th Cir. 2002) (affirming summary judgment on false-arrest claim when officers were on notice that suspects "were likely to raise entrapment as a defense to any subsequent prosecution," but still could reasonably conclude that the suspects committed a crime); Young v. Owens, 577 F. App'x 410, 414-15 (6th Cir. 2014) (finding that defendants were entitled to qualified immunity when plaintiff had inconclusive evidence of an affirmative defense); Rhodes v. Pittard, 485 F. App'x 113, 116 (6th Cir. 2012) (affirming summary judgment on false-arrest claim when the suspect told the arresting officer that he violently shoved another but also asserted that his use of force was justified to protect his property against trespassers).***

*Harvey v. Carr*, 616 F. App'x 826, 828-29 (6th Cir. 2015). Here, there is no evidence that Wozniak

19

*conclusively* knew that Shaw's behavior was protected by an affirmative defense. There is conflicting testimony, and there is video evidence to the contrary. See also, *Frazier v. Clinton Cty. Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-6064.

The reasonableness of Shaw's use of force, is, effectively, an assertion that her conduct in jumping out of her cruiser, spraying a group of unarmed protestors, a mere fifteen minutes after escorting another group through the line, was privileged and is an affirmative defense to the charge of the crime of assault. Probable cause is determined based upon review of evidence known to the arresting officer *at the time* of the arrest and simply because such conduct is after the fact determined to be privileged is not sufficient to negate probable cause. See *Mayes v. Columbus*, 105 Ohio App.3d 728, 737 (10th Dist.1995)(citing *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 616-17 (1st Dist.1992)). Moreover, Shaw must prove Wozniak and the City *conclusively* knew that her conduct was protected by a legally cognizable affirmative defense. There is, at most, conflicting evidence which in and of itself is insufficient to negate probable cause[1]. For these reasons, Shaw fails to demonstrate a lack of probable cause for the charges. Therefore, her Fourth Amendment malicious prosecution claim fails as a matter of law.

---

[1] Defendants note that ordinarily an assertion of "conflicting evidence" is the death knell of summary judgment. At this stage Defendants as movant must show that even assuming all the facts as Plaintiff alleges, there is no disputed issue of material fact and Defendants are entitled to judgment as a matter of law. Even assuming all the facts as Plaintiff alleges them, because at the stage of probable cause a party is not required to weigh evidence or conduct a quasi-trial, such factual assertions and characterization of relevant evidence from Plaintiff are insufficient to establish a lack of probable cause as determined by Wozniak. While you cannot have conflicting evidence for purposes of summary judgment, you CAN (and, indeed if you could not the standard for probable cause would be difficult to meet) have conflicting evidence for a probable cause determination. The relevant inquiry is therefore what did Wozniak know at the time of signing the probable cause affidavit. Based upon all of the evidence gathered, even assuming the facts as Plaintiff alleges them, such facts are insufficient to create a disputed issue of material fact as to the determination of probable cause.

    ii.  **Plaintiff cannot demonstrate a lack of probable cause to charge her with dereliction of duty.**

Previously, the law in the Sixth Circuit was that when a person faces multiple charges, probable cause as to any *one* charge will defeat a claim for malicious prosecution as to *any* related charge for which he is prosecuted." *Caminata v. Cty. of Wexford*, 664 F.App'x 496, 501 (6th Cir.2016). However, on June 20, 2024, the United States Supreme Court held, "the presence of probable cause for one charge in a criminal proceeding does not categorically defeat a Fourth Amendment malicious prosecution claim relating to another baseless charge." *Chiaverini v. City of Napoleon*, 144 S. Ct. 1745 (2024).

  The Probable Cause Affidavit states in pertinent part,

> Traci Shaw while employed as a public official/employee under 2921.01 of the O.R.C. (a sworn law enforcement officer) whose duties included but not limited to upholding and enforcing the laws of the City of Columbus and the State of Ohio did assault Victims #1, #2, and #3, was derelict in her duties and interfered with Victim #1, #2, and #3's Civil Rights as a sworn law enforcement officer in violation of O.R.C. 2903.13(A), 2921.44(E) and 2921.45.

  The criminal complaints cite section 2921.44(E) of the Revised Code. This section states in pertinent part, "[N]o public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office." Here, assuming Shaw committed an assault, there was probable cause to believe that she committed an act forbidden by law. Moreover, there is additional undisputed evidence of probable cause as to Shaw's dereliction of duty given that it is undisputed she did not complete a Use of Force Report regarding her use of chemical mace on May 30, 2020. ECF 54-1, Page ID 1886. See also, ECF 56-3, Page ID 2247. The City of Columbus Use of Force Policy 2.01 provides:

> All uses of force shall be reported consistent with Division policies. Involved personnel shall notify an available on-duty Division supervisor in the following

21

descending order: a) Their immediate supervisor; b) Another sworn supervisor within their chain of command; or c) Any other sworn Division supervisor who may personally conduct the investigation or may notify a supervisor in the involved officer's chain of command to conduct the investigation.

Ex. (A)(22).  Because there was probable cause as to Shaw's assault, there was probable cause as to her dereliction of duty charge.

### iii. Plaintiff cannot demonstrate a lack of probable cause to charge her with interference with civil rights.

R.C. 2921.45, the state statute under which Shaw was charged, provides:

(A)     No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

(B)     Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

The Complaints at issue cite to a violation of Kincaid, Hensel, Sumner, and Watters' Fourth Amendment rights. The testimony of Kincaid, and subsequently Hensel, establish that the group was boxed in and precluded from going west on Goodale, which constitutes a seizure for purposes of the Fourth Amendment. Ex. 6 and 14 to Ex. A (hand filed). "A seizure of a person does not need to take the form of 'physical force;' rather, it can be "a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995, 209 L. Ed. 2d 190 (2021) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "[A]n initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 104 S. Ct. 1758 (1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64

L. Ed. 2d 497 (1980)). The applicable inquiry is "whether the challenged conduct *objectively* manifests an intent to restrain." *Torres*, 141 S. Ct. at 998.

Here, by Shaw's own testimony, she was at the time, "directed to be the rear guard for the field force and to not let anyone go south or west." ECF 56-1, Page ID 1967. Effectively, Shaw directed them back to where the arrest of Luyster was taking place. ECF 56-1, Page ID 2022. For these reasons, the group was seized for purposes of the Fourth Amendment. Moreover, certainly at the time Shaw deployed her chemical agent, such activity demonstrated an "intent to restrain" the group. For these reasons, Shaw cannot demonstrate a lack of probable cause for the interference with civil rights charges.

> a. **Plaintiff cannot demonstrate a deprivation of liberty as understood under Fourth Amendment jurisprudence; the charges against Plaintiff on a summons, without more, do not constitute a fourth amendment seizure.**

The third prong of the test for a 42 U.S.C. 1983 violation based upon the Fourth Amendment requires Plaintiff to demonstrate she was deprived of a liberty interest. "[S]ervice with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation." *Noonan v. Oakland County*, 683 Fed. App'x 455, 463 (6th Cir. 2017) (quoting *Billock v. Kuivila*, Case No.4:11-cv-02394, 2013 U.S. Dist. LEXIS 20388, *18 (N.D. Ohio Feb. 14, 2013)); *Cummin v. North*, 731 Fed. App'x 465, 470–73 (2018); *Lowe v. Coffee County*, Case No.4:16-cv-83, 2018 U.S. Dist. LEXIS 11897, *8–10 (E.D. Tenn. Jan. 25, 2018); *Howell v. Cox*, Case No.3:16-cv-00814, 2017 U.S. Dist. LEXIS 196961, *6–8 (M.D. Tenn. Nov. 30, 2017). In *Noonan* the Sixth Circuit articulated the standard that a summons to appear in Court, without more is "too insufficient to satisfy the elements of a malicious prosecution claim." The Court described: "Noonan was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions. In short, despite the aggravation, financial cost, and personal

23

humiliation that Noonan suffered as a result of these false charges, we must conclude as a matter of law that he did not suffer a deprivation of liberty as understood in our Fourth Amendment jurisprudence." *Noonan* 683 F. App'x at 463.

As a result of the misdemeanor complaints, Shaw was served on a summons and was only required to appear in Court over two days, when she met with one of the victims and discussed the matter prior to the dismissal of the charges. ECF 54-1, Page ID 2014. Shaw was not stopped, arrested, incarcerated, or otherwise detained. She was not required to post bail and she was not subject to any travel restriction. Ex. A, ¶6(p); Doc 59-1, Page ID 2386. While Plaintiff was subject to the conditions of a bond, that included only no contact orders with the victims of the crime. ECF 54-1, Page ID 2010-2011. Shaw admitted that she never encountered the victims that she was aware of. Id. The Sixth Circuit has held that requiring attendance at court proceedings does not constitute a deprivation of liberty.  *Cummin v. North*, 731 Fed. Appx. 465, 473 (2018).

Shaw was placed on administrative leave with pay under the terms of the applicable collective bargaining agreement. ECF 56-1, Page ID 1919; See Collective Bargaining Agreement, p. 11.4 "Administrative change in a member's permanent assignment may be made by the Chief of Police to ensure the needs, interests, efficient or effective operation of the Division of Police." Ex. B, ¶(6)(2). To the extent that this administrative leave with pay constitutes a deprivation, it is analyzed under a Fourteenth Amendment analysis and is discussed below. *Claborn v. Montgomery*, No. 2:11-cv-679, 2012 U.S. Dist. LEXIS 131569 (S.D. Ohio Sep. 14, 2012).

Finally, a federal malicious prosecution claim arises under the Fourth Amendment (not the Due Process Clause) and therefore Fourth Amendment seizure principles must be considered. *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020). Without a cognizable Fourth Amendment deprivation, Shaw's Fourth Amendment claim fails, even assuming she could demonstrate a lack

of probable cause. See *Cummin*, 731 Fed. App'x at 470–73; *Noonan*, 683 Fed. App'x at 463; *Rapp v. Putman*, 644 Fed. App'x 621, 628 (6th Cir. 2016); *DePiero v. Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999); *Rudd v. Norton Shores*, Case No.1:18-cv-124, 2018 U.S. Dist. LEXIS 133746, *18 (W.D. Mich. Aug. 8, 2018); *Thieneman v. Smith*, Case No.3:17-cv-292, 2018 U.S. Dist. LEXIS 51272, *16–17 (W.D. Ky. March 28, 2018); *Mishak v. Serazin*, Case No.1:17-cv- 1543, 2018 U.S. Dist. LEXIS 44550, *15–17 (N.D. Ohio March 19, 2018); *Lowe*, 2018 U.S. Dist. LEXIS 11897, *8–10; *Howell*, 2017 U.S. Dist. LEXIS 196961, *6–8; *Hess v. Huber Heights*, Case No.3:13-cv-312, 2014 U.S. Dist. LEXIS 92370, *22–23 (S.D. Ohio July 8, 2014), *adopted by* 2014 U.S. Dist. LEXIS 105726 (S.D. Ohio July 31, 2014); *Billock*, 2013 U.S. Dist. LEXIS 20388, *18; *Ghaster v. Rocky River*, 913 F.Supp.2d 443, 455–56 (N.D. Ohio Sept. 24, 2012); *Briner v. Ontario*, Case No.1:07-cv-129, 2011 U.S. Dist. LEXIS 23745, *10–12 (N.D. Ohio Mar. 9, 2011).

For these reasons, Shaw fails to demonstrate a deprivation of her liberty as understood under the Fourth Amendment.

### B. Plaintiff's Fourteenth Amendment Claim Fails Because She Cannot Establish a Deprivation Sufficient for a Fourteenth Amendment Claim.

Shaw alleges that "Wozniak deprived Plaintiff of…the right to due process of law guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution." (Doc ID 1, Page ID 15).

### i. Plaintiff cannot prove her substantive due process claims because substantive due process does not recognize a claim for malicious prosecution.

The "substantive component of the Fourteenth Amendment's Due Process Clause, 'with its scarce and open-ended guideposts,' may not serve as the basis for a § 1983 malicious prosecution claim." *Darrah v. Oak Park*, 255 F.3d 301, 308 (6th Cir. 2001) (quoting *Albright v. Oliver*, 510 U.S. 266, 275 (1994)); *BPNC v. Taft*, 147 Fed. App'x 525, 531 (6th Cir. 2005); *Johnson v. Ward*,

25

43 Fed. App'x 779, 782 (6th Cir. 2002); *Wilson v. Livermore*, 1 Fed. App'x 334, 337 (6th Cir. 2001); *Knight v. Columbus Division of Police*, Case No.2:13-cv-1271, 2014 U.S. Dist. LEXIS 128790, *5 (S.D. Ohio Sept. 12, 2014); *Wertz v. West Milgrove*, Case No.3:08-cv-604, 2009 U.S. Dist. LEXIS 37129, *14 (N.D. Ohio April 30, 2009). The Sixth Circuit has specifically held that malicious prosecution claims "should be pursued by way of the Fourth Amendment, *not* the Due Process Clause of the Fourteenth Amendment." *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020) (emphasis added) (citing *Durham v. Estate of Losleben*, 744 Fed. App'x 268, 270 (6th Cir. 2018)).

For this reason alone, Shaw cannot maintain a § 1983 substantive due process claim against the City or Wozniak.

Alternatively, the "Supreme Court's central substantive-due-process teaching" is that "state action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Estate of Romain v. Grosse Pointe Farms*, 935 F.3d 485, 494 (6th Cir. 2019) (quoting *Sacramento County v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *Hill v. Jackson*, 751 Fed. App'x 772, 779 (6th Cir. 2018). The Sixth Circuit has "resisted application of shock-the-conscience claims in cases that do not involve physical force."

Here, Shaw does not allege in her Complaint that any actions taken by the City of Wozniak "shock the conscience." The record reveals that Wozniak investigated a variety of officers for potential criminal misconduct. Ex A, ¶3. Wozniak did so in his capacity as Deputy Director of the Department of Public Safety. Id at ¶2. All internal affairs investigations were referred to outside legal counsel. Ex. B, ¶5. Wozniak interviewed Shaw prior to bringing the charges against her, and two other officers. Ex. A¶7(l), Doc 59-1, Page ID 2385. Shaw voluntarily participated in the interview. ECF 54, Page ID 230. She indicated that the information guaranteed she could be fully

forthright with Wozniak. Id. Shaw had legal counsel present for the interview. Ex. A(10) (hand filed).

For these reasons, Shaw cannot satisfy the requirements of a substantive due process claim.

> **ii.    Plaintiff cannot demonstrate her procedural due process rights were violated.**

To state a procedural due process violation, a plaintiff must allege that: (1) she had a life, liberty, or property interest that was protected by the Due Process Clause of the Fourteenth Amendment; (2) she was deprived of that protected interest; and (3) she was not afforded adequate procedural rights prior to that deprivation. See *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019); *Daily Services v. Valentino,* 756 F.3d 893, 904 (2014); *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013); *Women's Medical Professional Corporation v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Thus, procedural due process claims involve a two-step analysis. See *Jergens v. State Department of Rehabilitation & Corrections,* 492 Fed. App'x 567, 569 (6th Cir. 2012) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). Moreover, even assuming a deprivation of such an interest, a post deprivation that is constitutionally sufficient will satisfy plaintiff's procedural due process rights. See *Swarthout,* 131 S. Ct. at 861; Hill, 751 Fed. App'x at 778 & n.7; *Jergens*, 492 Fed. App'x at 569. Here, Shaw fails to demonstrate she suffered any deprivation, nor that she was not afforded sufficient procedural safeguards. Moreover, she had the adequate post deprivation remedy of the criminal trial.  Support is more fully set forth below.

> **a.    Plaintiff was not deprived of a sufficient interest.**

Shaw alleges that as a result of criminal charges being filed she "garnered substantial media attention, casting Plaintiff in a disparaging light." (Doc 1, Page ID 10) However, the Sixth Circuit has specifically rejected the theory that defending oneself from criminal charges constitutes a

sufficient deprivation for purposes of a procedural due process claim. *Richardson v. South Euclid*, 904 F.2d 1050, 1052–53 (6th Cir. 1990); *Phillips v. McCollum*, Case No.4:11-cv-66, 2012 U.S. Dist. LEXIS 16219, *24 (W.D. Ky. Feb. 9, 2012).  "A complaint which alleges no loss beyond the inconvenience of defending oneself in court does not state a claim under § 1983." *Fulson v. Columbus,* 801 F.Supp. 1, 8 (S.D. Ohio 1992) (citing *Richardson*, 904 F.2d at 1054). "To hold otherwise would allow any defendant who succeeded against the government to countersue for a due process deprivation." *Schwasnick v. Fields*, Case No.08-cv-4759, 2010 U.S. Dist. LEXIS 65958, *17 (E.D.N.Y. June 30, 2010) (citing *All Aire Conditioning v. New York*, 979 F.Supp. 1010, 1015–16 (S.D.N.Y. 1997)). Similarly, injury to one's reputation, without more, does not implicate a liberty or property interest sufficient to invoke the procedural due process protections of the Fourteenth Amendment. See *Paul v. Davis*, 424 U.S. 693, 710–712 (1976); *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991); *Palmer v. Schuette*, 768 Fed. App'x 422, 427–28 (6th Cir. 2019); *Martin v. Cleveland Heights Police Department,* Case No.1:13-cv-1750, 2014 U.S. Dist. LEXIS 8246, *7–10 (N.D. Ohio Jan. 23, 2014). "Injury to reputation alone, however, is not sufficient to create a constitutionally protected liberty interest." *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). As the U.S. Supreme Court has held: "[t]he frequently drastic effect of the 'stigma' which may result from defamation by the government ... does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property'...sufficient to invoke the procedural due process protection of the Due Process Clause." *Id*. at 701. Instead, the plaintiff must show that the state's action both damaged his reputation and "deprived [him or her] of a right [such as employment] previously held under state law." *Id*. at 708.

28

Here, Shaw fails to satisfy the "stigma plus" test that the charges damaged her employment. She alleges she could not work special duty and overtime while the charges were pending. ECF 1, Page ID 10.   This Court has previously rejected such an argument. In *Sorrell v. Moore*, No. 2:16-cv-401, 2017 U.S. Dist. LEXIS 238386 (S.D. Ohio Oct. 31, 2017), plaintiff alleged that he was deprived of a protected property interest without due process when Lieutenant Echenrode and Deputy Chief Quinlan removed plaintiff from his position and placed him on restricted duty, therefore denying him the opportunity to work overtime and special hours, without a hearing prior or subsequent to that placement. This Court held: "[T]he Sixth Circuit has previously stated that "the suspension of [a] public employee with pay avoids due process problems entirely." *Harris v. Detroit Pub. Sch.*, 245 F. App'x 437, 444 (6th Cir. 2007). The Court in *Sorrell* went on to note that Sorrell (like Shaw here) continued to receive regular pay and benefits, and "the mere restriction on Plaintiff's eligibility to take advantage of overtime and special duty assignments thus did not deprive Plaintiff of any property right." See also, *Cf. Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999) *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (finding that a police officer's suspension during the course of an administrative investigation into the officer's alleged misconduct did not violate a protected property interest because the officer "was neither terminated nor lost any pay or benefits"). For these reasons, Shaw's loss of overtime and special duty pay is insufficient to create a protected property interest.

Finally, Shaw alleges that as a result of her criminal charges being filed, her contract with Columbus State Community College was non-renewed. ECF 1, Page ID 11, ¶62.  It is undisputed that Shaw was an at-will employee of Columbus State. ECF 56-1 Page ID 1896-1897. There is no property interest in at-will employment. *Clark v. Jackson*, No. 22-5553, 2023 U.S. App. LEXIS 8318 (6th Cir. Apr. 5, 2023).

Here, Shaw did not lose any wages, did not lose any seniority, and was not subject to any deprivation other than the criminal charges. For these reasons, she cannot establish a protected property interest sufficient for purposes of her Fourteenth Amendment due process claims.

### b. Plaintiff was afforded sufficient process.

The "fundamental aspects of procedural due process are notice and an opportunity to be heard." *Huntsman v. Perry Local School Board of Education*, 379 Fed. App'x 456-462-63 (6th Cir. 2010); *LaChance v. Erickson,* 522 U.S. 262, 266 (1998); *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976). Shaw does not deny that she was interviewed prior to the charges being authorized and filed against her. ECF 56-1, Page ID 1997. She cannot deny that she was not given an opportunity to be heard even prior to the criminal charges issuing, nor that she was provided adequate process with the dismissal of the charges. "The prosecution itself is the observance of process due the accused." *Richardson,* 904 F.2d at 1053; *Martin,* 2014 U.S. Dist. LEXIS 8246, *9; *Etzler v. Cincinnati,* Case No.1:07-cv-1035, 2009 U.S. Dist. LEXIS 91638, *7–8 (S.D. Ohio Sept. 30, 2009); *Kunde v. Independence,* Case No.1:05-cv- 1965, 2006 U.S. Dist. LEXIS 99967, *15–16 (N.D. Ohio March 17, 2006).

Shaw has not really pled a violation of her procedural due process rights, and the evidence fails to demonstrate the deprivation of such right. Thus, this claims fails as a matter of law.

### 2. Plaintiff's state law claims fail as a matter of law.

#### A. Plaintiff cannot succeed on her malicious prosecution claim under Ohio law.

To establish a claim of malicious prosecution, a plaintiff must prove that: (1) there has been a malicious institution or continuation of prior proceedings by the defendant against the plaintiff; (2) a lack of probable cause to file the prior lawsuit; (3) termination of the prior proceedings in favor of the plaintiff. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 288, 2007-

Ohio-4161, 871 N.E.2d 1159. A malicious prosecution claim cannot be based on a defendant's negligence. *Lacey v. Ohio Aud. Of State, 10th Dist. Franklin* No. 19AP-110, 2019-Ohio-4266, ¶21.

Shaw brings four individual counts of malicious prosecution as to each of the victims upon which Shaw deployed her chemical agent. These victims are: 1) Jaci Kincaid, 2) Samantha Sumner; 3) Alisha Watters; and 4) Haley Hensel. ECF 1, Page ID 15-17). First, the appropriateness of a malicious prosecution claim is not dependent on the identity of the victim, but rather on whether probable cause exists to believe a crime occurred.

It is undisputed that all the victims were present at the time that Shaw deployed her chemical agent. Jaci Kincaid informed Wozniak that the chemical agent hit her. See Investigative Summary ("Kincaid spun her head quickly and the pepper spray got her behind the ear. Sumner and Haley "got it" (pepper sprayed) in the eyes"). Ex. 3 to Ex. A, pg. 6; Doc 59-2, Page ID 2398. See also Answer of Defendants, ¶ 110, ECF 10, Page ID 57. The probable cause affidavit submitted states in pertinent part:

> My two female friends and I were unarmed and walking by two other young women and all of us were sprayed. We did not provoke the officer at all. You can see my hand right before we were sprayed trying to point to the right as I was going to tell her (Shaw) we were headed home.

Ex. 13 to Ex. A; Doc 59-2, Page ID 2476. This mirrors the exact language reported to Wozniak with the original complaint from Kincaid and as subsequently corroborated by Kincaid during her interview. Ex A, ¶6. Thereafter, Alisha Watters was interviewed on October 11, 2021, and she identified herself in the video. Ex. 3 to Ex.A, pg. 43; Doc 59-2, Page ID 2435. She stated she remembered Shaw "pepper spraying us." Id. at pg. 44; Doc 59-2, Page ID 2435.

Shaw makes much of the fact that Wozniak did not interview Samantha Sumner. However, Samantha Sumner was subpoenaed, and efforts were made to contact her. Ex. A, ¶10; Doc 59-1,

31

Page ID 2387. Moreover, there is no constitutional requirement that a suspect [like Shaw] must be identified directly by the victim before there is probable cause. *Coman v. Jackson Police Dep't,* No. 20-1037-JDT-cgc, 2020 U.S. Dist. LEXIS 150593, at *6 (W.D. Tenn. Aug. 20, 2020); *See also United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006) ("An eyewitness's statement that he or she saw a crime committed or was the victim of a crime is generally sufficient to establish probable cause"). *Weible v. Akron* (May 8, 1991) Summit App. No. 14878, 1991 Ohio App. LEXIS 2179, 1991 WL 77187 (finding a "police officer is not required to weigh and evaluate the truth of alleged affirmative defenses to a crime before he may act upon probable cause to arrest and charge a defendant")." See also *Frazier v. Clinton Cty. Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-606. Moreover, Ms. Kincaid testified that Ms. Hensel and Ms. Sumner were also shot in the eyes. Ex. A(3), pg. 6; Doc 59-2, Page ID 2398. For these reasons, Shaw cannot establish a lack of probable cause.

Even assuming Shaw could prove a lack of probable cause for her state law claims, she cannot prove actual malice. Under state law, actual malice is a separate criterion that must be proven. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 288, 2007-Ohio-4161, 871 N.E.2d 1159. Shaw's statements with respect to this required element are that Wozniak: 1) failed to interview Samantha Sumner; 2) failed to interview Hensel prior to the charges, and 3) "failed to include pertinent exculpatory evidence in the investigation." ECF 56-1, Page ID 2025. As set forth above, Kincaid's statement to Wozniak (as well as the photographs she submitted) establish probable cause for Shaw's deployment of the spray on Hensel and Sumner. Moreover, there is no evidence that Wozniak failed to include exculpatory evidence. All statements regarding what actions Shaw took regarding warnings, etc., are well documented in his report and the interview of Shaw. Finally, Shaw claims Wozniak did not consider drone evidence submitted. Id.

32

As set forth above, probable cause existed to charge Shaw with assault, interference with civil rights, and dereliction of duty.

### B. Plaintiff's Abuse of Process Claim Fails as a Matter of Law.

Shaw can either have an abuse of process claim or a malicious prosecution claim – not both. In distinguishing the related but separate torts, the Supreme Court of Ohio has held that: "[t]he two torts are not interchangeable; ***[t]he presence or absence of probable cause is the determining factor which divides the areas of operation of the two torts." *Turkoly v. Gentile*, 7th Dist. No. 20MA0043, 2021-Ohio-965, at ¶ 16, quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 301 fn. 6, 1994- Ohio 503, 626 N.E.2d 115 (1994) at 301, fn. 6. Thus, "[b]ased on this dichotomy,***_the assertion of one claim forecloses the other_." (Emphasis added.) To establish a claim of abuse of process, a plaintiff must prove: (1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct damage has resulted from the wrongful use of process.

### i. Plaintiff cannot establish an improper ulterior motive.

To show the process was perverted to accomplish an ulterior purpose, a plaintiff must identify both: (1) an act that was not proper in the normal conduct of the proceeding and (2) the defendant's ulterior motive. *Stout v. Columbia Gas of Ohio, Inc.*, 2d Dist. Clark No. 2020-CA-42, 2021-Ohio-609, ¶68. There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions. *Id*. "Initiating a lawsuit, by itself, is not an abuse of process." *Yona Inv. Grp., LLC v. Revilo's, LLC*, No. 5:19-CV-01842, 2020 U.S. Dist. LEXIS 228631, at *10 (N.D. Ohio May 27, 2020) citing *Hauser v. Bartow*, 273 N.Y. 370, 374, 7 N.E.2d 268, 269 (1937) ("Everyone has a right to use the machinery of the law, and

bad motive does not defeat that right."). Abuse of process typically involves using a legal proceeding to coerce a party with respect to something outside of the legal proceeding itself. *Id*. Here, the City and Wozniak carried out the investigation and carried out the criminal charges to their conclusion and in accordance with the law.

Shaw alleges: "Wozniak falsely and maliciously accused Plaintiff of criminal violations regarding Haley Hensel." ECF 1, Page ID 17, ¶110. When asked what ulterior motive was present, Shaw testified as follows:

> Q.     Can you just tell me why you believe that Kathleen Garber and Rick Wozniak would have an ulterior motive to harm you?
>
> A.     I believe it was a witch hunt because of the protests downtown, the fact that Baker & Hostetler didn't find hardly anything, very little discipline was given, they spent $650,000 with no -- nothing to show for it, and I believe that they came after me because they had to show something to the community that they were holding the police accountable whether the evidence was there or not.
>
> Q.     And who is they?
>
> A.     I'm sorry, Richard Wozniak and Kathleen Garber.
>
> Q.     No reason to dispute that the committee that we talked about at the beginning that Mr. Gibson headed up that kind of had two funnels, criminal and IA, was established at the end of June, you don't dispute that, do you?
>
> A.     No, ma'am.

ECF 56-1 Page ID 2036. Officer Shaw was not the only Officer charged out of these matters.

Moreover, even assuming that this is true, it does not rise to the level that Ohio courts have recognized as an ulterior purpose. As previously stated, abuse of process involves using a legal proceeding to coerce a *defendant* (here Shaw) with respect to something outside of the legal proceeding. *Stout v. Columbia Gas of Ohio, Inc.*, 2d Dist. Clark No. 2020-CA-42, 2021-Ohio-609, ¶68. "In an abuse of process case, the improper purpose usually takes the form of coercion to obtain

34

a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoon Yacht Club*, 75 Ohio St. 3d 264, 271, 1996-Ohio-189, (1996).

Here, Shaw does not allege that (and there is no evidence) the City used the process in order to obtain the payment of money, or to coerce or threaten *her* in any manner. There is no evidence that the process against Shaw was set in motion for any reason other than based upon probable cause to believe she committed a crime as depicted in the video evidence submitted. Even assuming Shaw's speculation were true, and the City and Mr. Wozniak were attempting to appease the "squeaky wheel" in the community, such motivation is insufficient to rise to the level of an improper ulterior motive to coerce *Shaw* to do something. *See opposite, Gemperline v. Franano*, 5th Dist. Delaware No. 21 CAE 01 0002, 2021-Ohio-2394, ¶ 23 (where Plaintiff alleged Defendants were attempting to do "lifelong reputational damage" and filed a civil lawsuit with the stated goal of "bankrupting him, intimidating him and harassing him" sufficient at the pleading stage for an abuse of process.).

### C. Plaintiff's Civil Conspiracy Claim Fails as a Matter of Law.

As the Sixth Circuit has noted, to prevail on a claim for conspiracy, a plaintiff must show: "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [her] of her constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). As an additional hurdle, the intracorporate conspiracy doctrine bars a finding of conspiracy when the alleged conspirators are all members "of the same collective entity," because, under such circumstances, "there are not two separate 'people' to form a conspiracy." *Id.* (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994); *cf. Monell v. Dep't of Soc. Servs.*,

35

436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (identifying municipalities as "persons" for purposes of § 1983). An exception to the intracorporate conspiracy doctrine arises, however, when a defendant is alleged to have acted outside the scope of their employment. *Jackson* 925 F.3d at 819.

Here, there is no evidence Wozniak acted outside the scope of his employment. All actions of Wozniak were taken in his capacity as an employee of the Director of the Department of Public Safety. Ex. A, ¶2; Doc 59-1, Page ID 2382. At most, Shaw's complaint is that Wozniak did not give proper weight to her testimony or review certain evidence which she has determined is exculpatory, but such facts do not negate probable cause and they do not establish a knowing falsehood. Shaw makes much of the fact that Wozniak stated in the probable cause affidavit: "at this point all protests were still downtown." ECF 56-1, Page ID 1912. However – this *is a direct quote from the email submitted to the City by Jaci Kincaid* and is indicated by Wozniak as such. The probable cause affidavit states in pertinent part:

> Jaci Kincaid (Victim #1) was one of the individuals who Shaw pepper sprayed. ***Victim #1 submitted the above video <u>and following narrative</u> in a complaint to the City of Columbus:*** We were walking home, several blocks from the major crowd of protestors on Saturday night. The protestors were all still downtown at this point…

Ex A(13).

Finally, Shaw makes much of the fact that Wozniak did not consider drone evidence. ECF 56-1, Page ID 1912. It is undisputed that the time in the drone videos is unverified. ECF 54-1, Page ID 458. And it is undisputed that there is no sound on the drones. ECF ID 56-1, Page ID 2026. Wozniak was shown the drone videos at issue at deposition and he indicated that they do not show 700 protestors downtown. Doc 54-1, Page ID 488.. At most, the drone shows an officer that Shaw has identified as herself (an officer that Wozniak did not identify as Shaw), at any

36

unspecified time, making a gesture towards the east. Doc 54-1, Page ID 512. It does not depict the victim group, and based upon their statements, they did not hear Shaw make these commands. ECF 54-1, Page ID 488. These witness statements are sufficient to establish probable cause.

Wozniak interviewed Shaw, as well as the victim of the incident. Ex, 3 to Ex. A; Doc 59-2, Page ID 2406. He reviewed the video evidence submitted which clearly shows Shaw exiting her vehicle and pepper spraying the group (Ex. A(4). There is, quite simply, no evidence that Mr. Wozniak knowingly filed false statements. Moreover, there is no evidence of a "conspiratorial objective to deprive Shaw of her constitutional rights" because she has no constitutional rights in overtime and special duty pay. For these reasons, Shaw's civil conspiracy claim fails as a matter of law.

### 3. Defendants are entitled to immunity under federal and state law.

#### A. Plaintiff has admitted she did not plead a *Monell* claim.

As an initial matter, Shaw has no federal constitutional claims against the City. See ECF 16, Page ID 94, ("Plaintiff did not assert a Monell claim and does not intend to assert one if Plaintiff amends her complaint."). To prove liability on behalf of the City, Shaw must prove that there a policy or custom that caused the constitutional injury of which she claims. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Monell v. Dep't of Social Servs. Of the City of N.Y.*, 436 U.S. 658, 694 (1978). A plaintiff seeking to establish municipal liability under § 1983 must first identify an underlying federal violation and then "demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013); *Stanfield v. Lima,* 727 Fed. App'x 841, 851 (6th Cir. 2018); *Thornton v. Columbus,* 727 Fed. App'x 829, 838 (6th Cir. 2018). Shaw indicated in her memorandum in opposition to the Defendants Motion for Judgment on the Pleadings that she did not assert a *Monell* claim (and does not assert

37

a *Monell* claim) and she has failed to identify a policy or practice of the City of Columbus that supports such a claim. The City is therefore entitled to judgment as a matter of law.

> **B.    Wozniak is entitled to absolute immunity for statements made in a criminal prosecution.**

Wozniak is entitled to absolute immunity for providing information leading to the charges against Shaw. The allegation underpinning Shaw's claim is that the Wozniak did not review (or give proper weight to) certain information that she deems to be relevant and dispositive of probable cause. Absolute immunity attaches to the act of providing information leading to the initiation of a judicial proceeding, even if the person providing that information knows that it is false.

The Supreme Court of Ohio has held that statements which initiate criminal proceedings are protected pursuant to the doctrine of absolute privilege in a "judicial proceeding." *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 506, 1994- Ohio 316, 634 N.E.2d 203 (1994) ("We hold that an affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding").

The "doctrine of absolute privilege protects any person who makes a statement or submits an affidavit to a prosecutor for the purpose of reporting the commission of a crime — even if the statements are false and are made in bad faith, with knowledge of their falsity and with actual malice." *Barnes v. Beachwood*, 8th Dist. Cuyahoga No. 87100, 2006-Ohio-3948, at ¶ 17, citing *M.J. DiCorpo*. The informant is protected by this absolute privilege against civil liability for those statements made reporting the actual or possible commission of a crime to the prosecuting attorney, "which bear some reasonable relation to the activity reported." Id., see, also, *Daher v. Cuyahoga Cmty. College Dist*., 2021-Ohio-2103, at ¶14-15. In *Daher,* plaintiff was terminated from his position with the defendant district and charged with several crimes based on information provided by the district's officer in charge of campus police and security forces.  Id. at ¶2.  When the charges

38

were subsequently dismissed, the plaintiff sued the district and officer. Id. The court dismissed the claims against the defendants, finding that they were entitled to absolute immunity from civil liability for their reports resulting in the initiation of criminal charges, *even if* those statements were made in bad faith with knowledge that they were false. *Daher, supra,* at ¶ 19.

Here, even assuming Wozniak's statements were made in bad faith (and Wozniak does not concede that they were), they are protected by absolute privilege.

### C.    Wozniak is entitled to qualified immunity on Plaintiff's 42 U.S.C. 1983 claims.

Shaw alleges claims for Fourth and Fourteenth Amendment violations against Wozniak in his individual capacity. ECF 1, Page ID 1. Wozniak is entitled to qualified immunity on both claims.

The defense of qualified immunity: "affords protection against individual liability for civil damages when officials have not violated a 'clearly established statutory or constitutional right of which a reasonable person would have known.'" *Haddad v. Gregg*, 910 F.3d 237, 253 (6th Cir. 2018) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985)); see also *Jones v. Croft*, Case No.2:12-cv-545, 2013 U.S. Dist. LEXIS 161706, *18–19 (S.D. Ohio Nov. 13, 2013) (qualified immunity applies equally to claims under §§ 1983, 1985, and 1986). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *Phillips v. Blair,* Case No.18-4043, 2019 U.S. App. LEXIS 26553, *6 (6th Cir. Sept. 3, 2019). A qualified immunity analysis consists of two questions: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established at the time of the violation. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Phillips*, 2019 U.S. App. LEXIS 26553, *6. "Qualified immunity protects an official if the plaintiff

39

fails to satisfy either step." *Phillips,* 2019 U.S. App. LEXIS 26553, *6 (citing *Citizens in Charge v. Husted,* 810 F.3d 437, 440 (6th Cir. 2016)).

For the reasons set forth above, Shaw can demonstrate no constitutional right that has been violated under the Fourth Amendment. Moreover, Shaw cannot demonstrate a lack of probable cause for the charges brought against her. She indicated that the video as submitted by Ms. Kincaid does not show any protestors and that such protestors had been pushed a block north on High Street. ECF 56-1, Page ID 1956. Shaw also admitted she did not tell Wozniak at the time of her interview that she displayed her mace for the group prior to deploying force. ECF 56-1, Page ID 1972. She did not dispute that Wozniak interviewed David Luyster, Thomas Paige, reviewed CPD logs, reviewed the video evidence submitted by Shaw, and interviewed Shaw herself prior to initiating charges on June 9, 2021. ECF 56-1, Page ID 1997. Shaw did not dispute the additional evidence reviewed by Wozniak prior to authorizing charges again on October 25, 2021. Doc 56-1, Page ID 1999-2001.

Even if Shaw could establish a violation of a clearly established right, she cannot show that such right was clearly established at the time. To determine whether a right is clearly established, courts within the Sixth Circuit look "first to the decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits." *Roell v. Hamilton County*, 870 F.3d 471, 483 (6th Cir. 2017) (quoting *Champion v. Outlook Nashville*, 380 F.3d 893, 902 (6th Cir. 2004)); *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002); *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). A particular action's "unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Middaugh v. Three Rivers*, 684 Fed. App'x 522, 530 (6th Cir. 2017) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003));

*Yoder v. University of Louisville,* 526 Fed. App'x 537, 545 (6th Cir. 2013). Moreover, the "precedent clearly establishing a right can be in the form of a case of 'controlling authority or a robust consensus of cases of persuasive authority.'" *Latits v. Phillips,* 878 F.3d 541, 552 (6th Cir. 2017) (quoting *Plumhoff v. Rickard,* 572 U.S. 765, 779–81 (2014)); see also *Matthews v. Copeland,* Case No.18-5070, 2019 U.S. U.S. App. LEXIS 16104, *6–7 (6th Cir. May 29, 2019) (There was no clearly established right when the Sixth Circuit had no "case with a similar fact pattern" and other circuits had conflicting opinions.); *Hall v. Sweet,* 666 Fed. App'x 469, 481 (6th Cir. 2016) ("A single district court opinion is not enough to pronounce a right is clearly established for purposes of qualified immunity.").

Both the Supreme Court and the Sixth Circuit have repeatedly warned lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *White v. Pauly,* 580 U.S. 73, 79 (2017); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *Brosseau v. Haugen,* 543 U.S. 194, 199–200 (2004); *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999); *Sawyer v. Smith*, 497 U.S. 227, 236 (1990); *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987); *Anderson v. True*, Case No.17-2144, 2019 U.S. App. LEXIS 22312, *5 (6th Cir. July 25, 2019); *Barberick v. Hilmer,* 727 Fed. Appx. 160, 162 (6th Cir. 2018); *Latits v. Phillips,* 878 F.3d 541, 552 (6th Cir. 2017); *Sumpter v. Wayne*, 868 F.3d 473, 487 (6th Cir. 2017); *Mitchell v. Schlabach*, 864 F.3d 416, 424–25 (6th Cir. 2017); *Rush v. Lansing,* 644 Fed. App'x 415, 424–25 (6th Cir. 2016); *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 508–09 (6th Cir. 2012). "If a court does not carefully define the right, it risks collapsing the two qualified-immunity inquiries into one, permitting the constitutional-violation inquiry always to answer the clearly established inquiry. Precedent demands instead that [courts] go down the stairs of abstraction to a concrete, particularized description of the right." *Hagans,* 695 F.3d at 508.

41

Clearly established law "must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79 (quoting *Anderson,* 483 U.S. at 640); *Barberick v. Hilmer*, 727 Fed App'x 160, 162 (6th Cir. April 4, 2018). Of course, it also "defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas)." *Hagans*, 659 F.3d at 508–09.

Thus, without precedent that is "sufficiently similar" to the precise facts and circumstances of a case at hand, there cannot be any clearly established right. *Endres v. Northeast Ohio Medical University*, Case No.18-3825, 2019 U.S. App. LEXIS 26380, *48–49 (6th Cir. Aug. 30, 2019); *Hilton v. Mish*, 720 Fed App'x 260, 264–66 (6th Cir. 2018). Ultimately, for a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers,* 319 F.3d at 848 (quoting *Russo v. Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)); *Anderson,* 483 U.S. at 639–10).

Here, there are no substantially similar facts to support the conclusion that an investigation, consultation with a victim, an interview of the Plaintiff herself in which Plaintiff admits to leaving the vehicle and spraying the group as depicted on a street that is devoid in the video evidence of protestors and bringing criminal charges and placing Plaintiff on administrative leave constitutes a violation of a clearly established right. In fact, precedent establishes the opposite. See *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002); *Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999); *Young v. Owens*, 577 F. App'x 410 (6th Cir. 2014); *Rhodes v. Pittard*, 485 F. App'x 113 (6th Cir. 2012).

Finally, the fact that the presence of probable cause for one charge in a criminal proceeding does not categorically defeat a Fourth Amendment malicious prosecution claim relating to another charge was only made clear by the United States Supreme Court in *Chiaverini* on June 20, 2024.

42

Therefore, the City Defendants should only be required to demonstrate probable cause as to one of the charges – not all.

> **D.** **Wozniak is entitled to qualified immunity for actions taken in investigating these matters because Plaintiff essentially argues negligence on the part of Wozniak.**

There is no evidence here that Wozniak engaged in reckless falsehoods in the investigation and subsequent charging of Shaw. At best, Shaw alleges he was negligent, which does not establish a constitutional violation. *Caminata v. Cty. of Wexford*, 664 F.App'x 496, 501 (6th Cir.2016) (citing *Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001) ("The facts in this case supported at most a finding of incompetent or negligent, investigation, which is insufficient to establish a constitutional violation")).

In *Caminata*, the plaintiff alleged that she was maliciously prosecuted. In finding that the investigator was entitled to qualified immunity, the Court noted that there was no evidence to suggest that the report contained "deliberate omissions" or "reckless falsehoods." Id. at *501. The court went on to note that "while the Plaintiff has cast doubt upon the soundness of Jenkinson's conclusions…he has failed to show that Jenkinson acted intentionally or recklessly." Id. As here, the investigator in *Caminata* spent multiple hours investigating, produced a lengthy report of his findings, and conducted interviews. Id. Here, Shaw testified that the evidence in support of her assertion that Wozniak made reckless falsehoods is his statement is the statement in the Affidavit the "protests were all downtown." Ex. 13 to Ex. A; Doc 59-2, Page ID 2476. But such statements as set forth in the Probable Cause Affidavit are a recitation (and are noted as such in the Affidavit) of the correspondence that Jaci Kincaid provided to Wozniak. The other item Shaw cites as false is that Mr. Wozniak did not include the video from Ian Brandeberry in the probable cause Affidavit. Doc 56-1, Page ID 1912. Ian Brandeberry was interviewed on July 31, 2020 regarding

43

events that occurred at High Street and Russell Street. Ex. A¶f (5). The video submitted by Ian Brandeberry (which Brandeberry did not take) shows Brandeberry wearing a purple shirt being arrested at the corner of High and Russell Street, blocks away from where the events in question occurred. Ex. A(f)(5). Finally, the drone videos in question do not contain a time stamp and while Shaw can review and identify herself, it is undisputed that Wozniak did not know that was Shaw, and the videos simply show her motioning to the crowd to back away.

For these reasons, Shaw does not demonstrate any reckless falsehoods by Wozniak. Statements by Shaw are accurately captured in Wozniak's Investigative Summary based upon statements told to him by her at her interview. As best, Shaw alleges negligence on the part of Wozniak.  Therefore, he is entitled to qualified immunity.

E.      **To the extent that Plaintiff is attempting to bring federal constitutional claims against the City, it is entitled to absolute prosecutorial immunity.**

The City is entitled to absolute immunity for actions taken for prosecutorial functions. In *Red Zone 12 LLC v. City of Columbus*, the plaintiff alleged that the then City of Columbus Prosecuting Attorney, Richard Pfeiffer, improperly filed a nuisance suit after it was judicially determined that there was "absolutely no public harm." Id. at 509. Plaintiff therein alleged claims under 42 U.S.C. 1983, and, amongst other claims, violations of Plaintiffs' procedural and substantive due process rights. In finding absolute immunity for Pfeiffer, and that the plaintiffs failed to allege a policy of the City that would get rid of absolute immunity, the Court held:

> that Pfeiffer may have prosecuted with malicious intent is inapposite. Even bad motives do not void the protections of prosecutorial immunity. Further, the Supreme Court explained in *Burns* that when "the judicial process is available as a check on prosecutorial actions[,] . . . '[t]he safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.'" ***Here, the judicial system provided a check on Pfeiffer's behavior: the Franklin County Municipal Court dismissed the***

44

> *nuisance suit and denied Pfeiffer's request for injunctive relief. Thus, although Pfeiffer may have exercised poor judgment in pursuing the nuisance case, his actions were ultimately "subjected to the 'crucible of the judicial process.'"* We therefore affirm the district court's grant of absolute prosecutorial immunity to Pfeiffer with regard to all of Red Zone's federal constitutional claims.

*(emphasis supplied). Red Zone 12 LLC v. City of Columbus*, 758 F.App'x 508, 514-515 (6th Cir.2019). As here, all of the actions of the City were actually subjected to the crucible of judicial process, and therefore, the City is absolutely immune from suit. Moreover, Shaw has conceded that she did not intend to assert a Monell claim against the City and, therefore, has identified no policy or practice that would support an underlying constitutional violation.

For these reasons, the City is entitled to absolute immunity for prosecutorial functions on any federal claims brought against it.

### F. The City is also entitled to absolute immunity for prosecutorial functions on Plaintiff's state law claims.

The Political Subdivision Tort Liability Act sets forth a three-tier analysis for determining whether a political subdivision is immune from liability for injury or loss to a person or property. *See* R.C. 2744, *et seq*. A political subdivision includes a municipal corporation. R.C. 2744.01(F). The first tier of the analysis provides that political subdivisions are generally not liable in damages for causing personal injuries or death of a person. R.C. 2744(A)(1). While not absolute, the statute does not expressly confer immunity; rather, it generally denies liability. *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 OhioSt.3d 392, 2008-Ohio-2567, 889 N.E.2d 521. The next tier in the analysis is to examine the five exceptions to immunity described in R.C. 2744.02(B) to determine whether any apply such that immunity would be abrogated. *Id*. at 395. R.C. 2744.02(B) provides liability for political subdivision for the acts or omissions of the political subdivision or any of its employees in connection with a proprietary function in five (5) situations:

1.      The negligent operation of a motor vehicle;

2.      The negligent performance of acts by the political subdivision's employee(s) with respect to proprietary functions;

3.      The negligent failure to keep public roads in repair and other negligent failure to remove obstructions from the roads;

4.      The negligence of their employees that occurs within the grounds of and is due to physical defects within the grounds that are used in connection with the performance of a governmental function; and

5.      Where civil liability is expressly imposed by statute.

R.C. 2744.02(B). Proprietary functions are listed in R.C. 2744.01(G)(2) and are generally defined in R.C. 2744.01(G)(1) as a function of a political subdivision that is not listed and expressly defined in R.C. 2744.01(C)(1) and promotes or preserves the public peace, health, safety, or welfare that involves activities that are customarily engaged in by nongovernmental persons. Some examples of proprietary functions are the operation of a hospital, design, construction, renovation, maintenance of a public cemetery, and the operation and control of a public stadium or auditorium. R.C. 2744.01(G)(2).

The final tier of the analysis arises when immunity has been abrogated by the second tier. A political subdivision's immunity may be reinstated if it can successfully argue any of the defenses in R.C. 2744.03. *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 OhioSt.3d 392, 396, 2008-Ohio-2567, 889 N.E.2d 521.

Here, the City clearly falls within the definition of a political subdivision as it is a municipal corporation in the State of Ohio. Further, none of the exceptions apply in this case. To the extent that Shaw attempts to argue one does, it would be the those that deal with the performance of proprietary functions. That argument, however, would fail. The City, through Special Prosecutor Garber, was involved in a prosecutorial function, which is expressly set forth as a governmental

46

function pursuant to R.C. 2744.01(C)(2)(f). Even if Shaw could show that the City was somehow involved in a proprietary function in some way to abrogate immunity, the defenses in R.C. 2744.03 would reinstate the same. This code section reinstates immunity where the employee of the subdivision was engaged in a prosecutorial function. R.C. 2744.03(A)(1).

> **G.** **Wozniak is immune from liability because Plaintiff cannot demonstrate conduct on his part that was with malicious purpose, in bad faith, or in a wanton or reckless manner.**

Shaw's state law claims against Wozniak, in his individual capacity, cannot overcome the immunity to which he is entitled under R.C. 2744.03(A)(6)(b). *Zumwalde v. Madeira and Indian Hill Joint Fire Dist.*, 128 Ohio St.2d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 1. R.C. 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. This section creates a "presumption of immunity' which plaintiffs must overcome to establish liability." *Abdulsalaam v. Franklin County Bd. of Comm'rs*, 637 F.Supp.2d 561, 585 (S.D. Ohio 2009) (quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st Dist. 1995)). Mere negligence" is insufficient to overcome this presumption. Jd. The issue of whether an employee of a political subdivision is statutorily immune is not a question for the jury; it is a question of law to be determined by the Court prior to trial. *See Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869 (1992).

Ohio's court of appeals have defined these terms as follows:

> For the purposes of R.C. 2744.03, "malice" refers to "the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." "Bad faith" has been defined as "a sinister motive that has no reasonable justification," and "wanton" conduct implies a failure to exercise any care. "Reckless" conduct is "conduct that causes an unreasonable risk of harm." These terms represent distinct standards of care and are not interchangeable.

*Townsend v. City of Kettering*, 2d Dist. Montgomery No. 29376, 2022-Ohio-2710, § 29 (citations

omitted). Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result. *Calloway v. Akron Police Dept.*, 2021-Ohio-4412, 183 N.E.3d 1, ¶24 (9th Dist.). Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Id*. The actor must be conscious that his or her conduct will result in injury. *Id*. See *Bykova v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 8th Dist. Cuyahoga No. 95484, 2011-Ohio-1250, ¶ 10 (finding where evidence did not demonstrate acting outside the scope of employment and following agency procedures, CCCDCFS was entitled to immunity.); see also, *Brannon v. Troutman*, 75 Ohio App.3d 233, 243, 598 N.E.2d 1333 (9th Dist.1992) (finding immunity attached to employees actions where reasonable minds could conclude that an investigator conducted the investigation and reported it to the trustees in accordance with their civic duties). Finally, "[t]he standard for showing that a political subdivision employee acted with malicious purpose, in bad faith, or in willful, wanton, or reckless manner is 'rigorous' and will in most circumstances be difficult to establish." Jd. at {31 (citing *Hoffman v. Gallia Cty. Sheriff's Office*, 2017-Ohio-9192, 103 N.E.3d 1, | 38 (4th Dist.)).

Shaw cannot demonstrate that any conduct on the part of Wozniak was with malicious purpose, in bad faith, or in a wanton or reckless manner. Wozniak was hired on or about July 1, 2020 and charges were not filed until June 9, 2021. Wozniak interviewed Shaw, the victim, Jaci Kincaid, consulted with a CPD training officer, interviewed Thomas Paige who admitted he did not exit the vehicle, and interviewed David Luyster, and reviewed CPD records. Wozniak also reviewed information from BWC of Daniel Hand and Kaitlyn Morales to identify Shaw. Shaw's

criticisms of his efforts in the investigation are insufficient to overcome his immunity under R.C. 2744.03(A)(6)(b).

## IV.     CONCLUSION

For the foregoing reasons, the City Defendants submit there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

Respectfully submitted,

*/s/ Molly R. Gwin*
Molly R. Gwin (0088189)
Michael S. Loughry (0073656)
Charles Schneider (0005821)
Alexis R. Pannell (0102946)
ISAAC, WILES & BURKHOLDER, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Phone: 614-221-2121/ Fax: 614-365-9516
mgwin@isaacwiles.com
mloughry@isaacwiles.com
cschneider@isaacwiles.com
apannell@isaacwiles.com
*Attorney for Defendants Richard Wozniak and City of Columbus*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically this 12 day of July, 2024.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Molly R. Gwin*
Molly R. Gwin (0088189)

49